## E. R. DELOGNY v. J. S. DAVID.

Where real property is sold by written title, it is to the written will of the parties at the time of the sale that we must refer, to ascertain the object sold ; we are not permitted to defeat the plain and ordinary meaning of their language by theories deduced from a presumed inadequacy of price or a comparison of the business talents of the vendor and vendee, even supposing such matters to be properly in evidence.

Where a particular claim comes precisely within the written description of the object sold, the vendor is estopped by the very distinct terms of his act of sale from saying he never meant to sell that claim, and the writing is conclusive upon the parties unless impeached for fraud.

MERRICK, C. J., dissenting.   The object of construction of an instrument is to ascertain the intention of the parties.   That intention, when ascertained, is the act itself; the notarial instrument is but the evidence of it.

One of the first rules of construction is that the instrument must be understood according to the subject matter of the contract, *verbo debeat intelligi, secundum subjectam materiam.*

It is the common intent of the parties—that is the intent of *all* the parties that is to be sought; for if there was a difference in this intent, there was no common consent and consequently no contract.

APPEAL from the Second District Court of New Orleans, *Lea*, J.

S. L. Johnson, for plaintiff and appellant.    *Benjamin, Bradford & Finney*, for defendant.

SPOFFORD, J.   The plaintiff and the wife of the defendant succeeded to all the property, movable and immovable, composing the community between the father and mother.   The property remained in a state of indivision for many years.   Afterwards, on the 18th February, 1837, the plaintiff made a notarial act of sale to the defendant, *John S. David*, (whose wife had meanwhile died,) of his undivided half of the property of the succession, situated in the faubourg Lacourse, for the sum of $15,000.   The body of the act of sale specified nine distinct parcels of ground in the faubourg Lacourse as the objects of sale, but before the act was closed the vendor added the following clause in explanation of his intent, upon the interpretation of which this cause must turn.

"Avant la signature du présent acte, le dit sieur *Edouard Robin Delogny* a déclaré que son intention a été et est encore de vendre au dit sieur *John S. David*, par les présentes, tous les droits qu'il a *ou peut avoir sur toutes espèces de lots de terre au faubourg Lacourse, et lui appartenant du même chef que ceux dont il est question dans le corps de cet acte*, à l'exception cependant de ceux qu'il a ou peut avoir conjointement avec les héritiers da sa défunte sœur, sur la batture du dit faubourg Lacourse et dont il réserve sa part."

Amongst the property belonging to the community between *Robin Delogny* père and his wife, to which the plaintiff and the defendant's deceased wife, suc-

ceeded, were portions of two rectangular spaces in the squares known as "la place de l'Annonciation" and "la place du Marché," a portion of both of those squares being within the faubourg Lacourse.

In 1807 or 1808 *Delogny* père, owner of faubourg Lacourse, and *Livaudais*, owner of faubourg Annonciation, had caused a plan to be made laying off these faubourgs into squares, lots and streets, upon which these places figured with the designations before mentioned, as may be seen in part by reference to the case of *Xiques* v. *Bujac*, 7 An. 500.

At the date of the sale from the plaintiff to the defendant, it seems these squares were, by a sort of tacit consent, treated as *loci publici*, and were actually in possession of the Municipality No. Two.

Many years afterwards, *Livaudais* and *David* (the present defendant) sued the Municipality, and recovered each an undivided portion of square No. 34, in the centre of Annunciation Square, on the ground that there had been no dedication of it to the public. The case will be found reported in 5 An. p. 8. The same parties were afterwards equally successful in suing for the recovery of an undivided portion of Market Square. See 8 An. 397.

· The plaintiff has now sued *David* for an undivided half of the land thus recovered by *David* in the two suits just cited, to wit: an undivided half of that portion of the tract which lies within the faubourg Lacourse.

*David* resists this demand, on the ground that the plaintiff sold him all his rights therein by the notarial act of the 18th February, 1837, from which we have quoted the clause said to be decisive of this controversy.

The plaintiff has proved that shortly before this act of sale was passed the defendant, in his capacity of tutor to the minor children of his deceased wife, (plaintiff's sister,) had caused an inventory to be made of their interest in the property ceded to their mother and the plaintiff by *Delogny* père, which was appraised at $16,000, not including the pieces of land now in controversy, and that the defendant declared, under oath, in the inventory, that he knew of no other property belonging to the succession.

The plaintiff also offered a witness to prove that the land now in dispute was worth in 1837 more than $15,000, and another to prove that the defendant was better acquainted with matters of business (except planting) than the plaintiff. This testimony was rejected, as going against and beyond what was contained in the act of sale, and thus falling within the inhibition of Article 2256 of the Civil Code.

It is not necessary to notice the bill of exceptions taken to the rejection of this evidence, as we do not conceive it would overthrow our construction of the act of sale, even if it were admitted.

The sale is not attacked for lesion beyond moiety, nor for any misrepresentation or concealment on the part of the vendee.

It may be conceded that at the date of the sale both parties were ignorant of the fact that the squares in question were the property of the heirs of *Livaudais* and *Delogny* père. Still we think that the chance of recovering them was conveyed by the plaintiff to the defendant under the unambiguous and explicit terms of the deed of sale.

When real property is sold by written title, it is to the written will of the parties at the time of the sale that we must refer to ascertain the object sold; we are not permitted to defeat the plain and ordinary meaning of their language by theories deduced from a presumed inadequacy of price, or a compari-

DELOGNY.    son of the business talents of the vendor and vendee, even supposing such mat-
v.
DAVID.      ters to be properly in evidence.

It is only by assuming that there is ambiguity in the deed that the plaintiff and appellant seeks to derive any benefit from his parol testimony. He argues that in the phrase *"toutes espèces de lots de terre,"* the word *"lots"* was used in its technical English sense, meaning the uniform divisions of a square that had been subdivided into regular building spaces. But this supposition is repelled by the use of the same term in other parts of the deed, showing that it was employed in its more loose and general sense of "tract" or "portion." Thus, among the *"lots de terre situés au faubourg Lacourse et ci-après décrits,"* there figures one described as *"une portion irrégulière de terrain, designé,"* &c.

Again, in the clause where the expression occurs, and upon the meaning of which this case turns, we find a refutation of the theory that the word *"lots"* was used in its restricted and technical sense, for a special reservation is made of those "LOTS *de terre sur la batture du dit faubourg Lacourse.* The batture was not then divided into building lots.

The expression *"toutes espèces de lots de terre au faubourg Lacourse,"* is a very broad expression, sufficient of itself to embrace the squares in controversy. But this is not all. The meaning of the parties is still more distinctly enunciated; the vendor adds to the former words the phrase *"lui appartenant du même chef que ceux dont il est question dans le corps de cet acte."* Having specified certain pieces of land in the body of the act as the objects of sale, he adds that it was and is his intention to sell by this act to the defendant all the rights which he had or might have to all sorts of parcels of land in the faubourg Lacourse, and belonging to him by the same title as those named in the body of the act. An idle and uncalled for addition if he intended to sell nothing but the specified lots; but a meaning addition if he intended to sell more, and one quite comprehensive of the squares now in dispute.

It implies the possibility of the existence of claims to land in the faubourg Lacourse, descended from *Delogny* père, which were then unknown to the contracting parties; and it specially conveyed the rights of the vendor to all such unknown claims; *tous les droits qu'il a ou* PEUT AVOIR; all the chances of recovering land in the faubourg coming to the vendor *du même chef* with the known and specified tracts.

After thirteen years, the defendant, by means of litigation, succeeded in recovering an interest in certain tracts of land in the faubourg Lacourse which had once been supposed to be public, but which were decreed not to be so but to have descended to him from *Delogny* père; the plaintiff is estopped by the very distinct terms of his act of sale from saying he never meant to sell this claim, for it comes precisely within the written description of the object sold. And the writing is conclusive upon the parties, unless impeached for fraud. *Boner* v. *Mahle,* 3 An.

It is, therefore, decreed, that the judgment be affirmed, with costs.

MERRICK, C. J., dissenting. I have doubts as to the correctness of the conclusions of my colleagues.

The plaintiff sold to the defendant his interest in certain lots, which he described in the deed of conveyance by their numbers and dimensions, and the squares in which they were to be found. Some of them are described as fronting on the Annuciation Square.

DELOGNY
*v.*
DAVID.

The act of sale was in the French language, and the parties, by using the word "lots," must be understood as using the word in its English sense—that is, as a lot of ground, a subdivision of a square—for the word has a very different signification in the French, the language of the act.

Every one of the lots specially described formed but a subdivision of a square. The price of the undivided interest in the lots sold was $15,000. At the time of the sale the interest of plaintiff in the two squares then supposed to be public was worth $15,000 more.

Now the object of construction of an instrument is to ascertain the intention of the parties. That intention, when ascertained, is the act itself. The notarial instrument is but the evidence of it.

One of the first rules of construction is that the instrument must be understood according to the subject matter of the contract. *Verba debent intelligi secundum subjectam materiam.* The subject matter of the contract was the conveyance to the defendant of plaintiff's undivided interest in the *lots* of ground in the faubourg Lacourse, and not squares, (*îlets*) of which neither party at that time supposed the plaintiff to be the owner.

That the plaintiff did not intend to sell the interest in Annunciation Square is evident from his describing other lots as bounded on that *square;* that the defendant did not suppose he was buying the *square* is evident from the fact that sometime before his purchase he caused the interest in the "lots" to be inventoried as belonging to her succession, and he made no mention of the square, although he gave in the property under oath. Moreover the two squares were manifestly in the possession of the public, and appeared to be dedicated to public uses, and consequently the parties must have supposed, as it is evident from their conduct, that they were *extra commercium*, things impossible to sell.

No. 4 of Article 1940 says: "It is the common intent of the parties, that is, the intent * (interest) of all the parties, that is to be sought for; if there was a difference in this intent, there was no common consent, and consequently no contract."

Article 1954 of the Civil Code declares that "However general be the terms in which a contract is couched, it extends only to things concerning which it appears the parties intended to contract." See also C. C. 3040, and the case of *Payler* v. *Hamershaw,* 4 M. & S. 423.

This rule is taken word for word from No. 98 of Pothier on Obligations, with the exception of the concluding phrase, which is, however, implied in what precedes it.

It reads, as I translate it: "However general may be the terms in which a contract may be couched, it comprehended only the things concerning which it appears the contracting parties intended to contract, *and not those of which the parties have not thought.*"

If we apply this rule to the case before us, we find the parties contracting in reference to city *lots* which were in commerce, lots which were fractional parts and subdivisions of squares. It may, therefore, very well be supposed that the plaintiff intended to convey to the defendant his interest in any similar *lots* which he had omitted in his description or enumeration, and nothing more. For language appears to me to be somewhat forced and equity injured and this principle of law violated, when we extend the term "lots" to squares of ground or public places which bore technically another name, or which were at that

---

* "Intention" in the French text.—REP.

5

SUPREME COURT OF LOUISIANA,

DELOGNY
v.
DAVID.

time of equal value to all the *lots* enumerated, and which appeared to be out of commerce, and which the parties themselves did not suppose it possible to sell.

The allusion to the levee in the act of sale does not, I think, materially weaken the view here taken; for the levee, not having been laid out into squares, might well bear the name of lot or lots, particularly if any part of it was inclosed or used, while it could not be applied with the same propriety to a public place.

With the grave doubts resting upon my mind which these considerations have raised, I am not at present able to yield my full assent to the decree.