No. 3214

Second Circuit

---

LOUISIANA FLOUR & FEED COMPANY, INC., v. PARNELL

---

(May 22, 1928.   Opinion and Decree.)
(June 28, 1928.   Rehearing Refused.)

---

(*Syllabus by the Editor*)

1. **Louisiana Digest—Tender—Par. 1.**
A tender is not necessary before bringing suit where any rights which defendant may have to the uncollected notes may be protected by the judgment.

2. **Louisiana Digest—Pleading—Par. 62.**
Where the illegality of a contract does not necessarily follow from the allegations of the petition but must depend upon inferences, an exception no cause of action will be overruled.

Appeal from the Fourth Judicial District Court, Parish of Ouachita.  Hon. J. T. Shell, Judge.

Action by Louisiana Flour & Feed Company, Inc., against Charles W. Parnell.

There was judgment for defendant and plaintiff appealed.

Judgment reversed, exception no cause of action overruled, and case remanded for trial.

R. H. Oliver, of Monroe, attorney for plaintiff, appellant.

Theus, Grisham & Davis, of Monroe, attorneys for defendant, appellee.

WEBB, J.   In this action plaintiff, Louisiana Flour & Feed Company, Inc., seeks to enforce against defendant, Charles W. Parnell, an alleged agreement entered into between the parties on the 9th of December, 1924.

Plaintiff alleges that it was a creditor of C. W. Parnell & Co., Inc., for the sum of $2488.87 with 8% per annum interest thereon from June 30, 1921, secured by certain mortgage notes, and that in November, 1921, involuntary bankruptcy proceedings were taken against C. W. Parnell & Co., Inc., under which an order was issued for the sale of all the property of the bankrupt, and that pending the sale C. W. Parnell, the defendant, the principal stockholder of C. W. Parnell & Co., Inc., having conceived plans for the reorganization of the company which contemplated his coming into possession of its property, or so much as he could acquire, entered into an agreement with plaintiff of the following tenor:

"Party of first part is holder and owner of note of C. W. Parnell & Co., Inc., for $2488.87, with 8% interest from June 20th, 1921, with certain mortgage notes attached thereto as collateral.   At the sale of assets of C. W. Parnell & Company, Inc., to be held on Dec. 10th, the collateral shall be bid in by party of first part, or, in bulk with remainder of assets by party of second part or some one acting in his interest. In latter event said collateral shall be delivered to party of first part as its property, without deposit of any money, at the price of the indebtedness of C. W. Parnell & Company, Inc., to party of the first part, irrespective of the amount of the bid. Party of the first part shall proceed with reasonable diligence to collect the said collateral notes from the various makers, paying over to C. W. Parnell whatever surplus there may be, if any, over the indebtedness due

party of the first part. On the other hand, if, after a reasonable time and due effort to collect, part of the first part shall not have collected the full amount due it, as represented by the note of C. W. Parnell & Company, Inc., then party of the second part shall pay the deficiency to party of the first part."

Plaintiff further alleges that acting in pursuance of the agreement it became the purchaser of the collateral mortgage notes and began at once to collect same and had collected as much from the said notes as it was possible for it to do, and had collected all that it was possible to collect, which was less than the amount of the note of $2488.87 with interest, and that it had made demand on defendant for payment of same without avail, and it prays for judgment for such amount with 8% per annum interest from judicial demand and costs.

The defendant excepted that the petition failed to state a right or cause of action, which was sustained and judgment rendered dismissing the suit, from which plaintiff appeals.

The grounds on which the exception was based may be stated as follows: That the contract was in violation of public policy and null; that the consideration was illegal; and, further, that there was an implied obligation on the part of plaintiff to surrender to defendant any of the uncollected notes, and the surrender of same was a condition precedent to enforcing the obligation of defendant.

The contention that it was necessary for plaintiff to surrender the uncollected notes (assuming there were any) or to allege a tender, as a condition precedent to the enforcement of the obligation of defendant, while urged by counsel is not discussed, and considering that the allegation of tender is usually necessary as a condition precedent to the enforcement of a right only when so declared by statute, or in actions for rescission, or where stipulated in the contract, and as none of these reasons appear in the present instance, and as it appears that any right which defendant may have to the uncollected notes may be protected in his defence and by the judgment, we do not think it was necessary for plaintiff to allege a tender.

The position that the consideration of the contract was illegal, was discussed by counsel in connection with the contention that the purpose of the parties was to stifle and prevent competitive bidding at the sale, that is, the parties bound themselves not to bid against each other and the effect was to stifle bidding, urging that the consideration or cause of the agreement on the part of plaintiff was the promise of defendant to guarantee the payment of the debt due to plaintiff by the bankrupt, while plaintiff apparently takes the position that the agreement should be considered as relating solely to the collateral notes in which the reciprocal promises of the parties was on the one hand to pay or deliver to the other any amount collected from the notes in excess of the indebtedness due by the bankrupt to plaintiff, and on the other to pay a sum equal to the deficiency in event the amount collected from the notes was less than the indebtedness due plaintiff, and the effect of the agreement was to encourage rather than to stifle bidding, but that if the effect was otherwise, the validity of the agreement must depend upon whether or not the parties were actuated by honest motives.

The memorandum of the agreement is somewhat vague and does not set out in apposition the reciprocal promises of the parties, and it does not show on its face that either of the parties bound themselves not to bid, or that the agreement of defendant with relation to the payment of the indebtedness due plaintiff was in consideration of any agreement on the part of the

latter not to bid, but the defendant contends that when the contract is considered with the allegations of the petition that defendant, Parnell, desired to obtain assets of the corporation, and the declaration in the agreement that plaintiff was a creditor of the corporation holding collateral paper as security, and the manner of conducting or offering the assets for sale (in globo) and in parcels, the adjudication being made in globo only when the bid was equal to or in excess of the bids for the parcels, with the law under which it was necessary for plaintiff to protect its rights in the pledged notes, necessarily leads to the conclusion that the object or cause of the contract was to stifle or prevent competitive bidding.

The conclusion is based upon an assumption that the parties' interests were adverse (defendant's interest being to acquire the assets at the minimum price and plaintiff's being that the assets and especially notes should bring the maximum price) and that by the agreement with relation to the payment of the indebtedness due plaintiff by the bankrupt the necessity of plaintiff protecting the collateral was avoided, and by means of the manner of conducting the sale defendant was to obtain the assets without coming in competition with plaintiff.

The petition, however, shows that plaintiff did bid on the collateral notes and became the purchaser and we assume it did protect its interest, and it is not shown that the assets of the bankrupt were offered in globo and in parcels, nor is it claimed that any statute, rule or order of court required the assets to be so offered, nor does it appear that defendant bid for or acquired any part of the assets of the bankrupt.

While it may be the parties did contemplate that the assets would be offered in globo and in parcels and that under their agreement they bound themselves not to come in competition with each other, in such offerings as to the notes, and thus their contract be held null and void as contrary to public policy, without regard to their motives, we do not think such conclusion necessarily follows from the facts alleged by plaintiff but must largely depend upon inference drawn from facts which do not appear from the pleadings.

The illegality of a contract as a means of avoiding compliance with a promise thereunder is usually a matter of defence to be presented by a special plea (Harvey vs. Fitzgerald, 6 Mar. (O. S.) 530; Katheman vs. Ins. Co., 12 La. Ann. 30); however, when the illegality arises from violation of a law relating to public policy and is apparent from the contract or becomes apparent when considered with allegations of the petition, it may be urged in support of an exception, but in such case the illegality should clearly appear and not be inferred, as there cannot be any presumption that one has violated the law or that they contracted with the view of its future violation.

"Without minimizing the importance of the doctrine that contracts should not be enforced if they contravene public policy, many courts have cautioned against recklessness in considering contracts as being in violation of public policy * * * All that the cautionary remarks may be interpreted to mean is that in determining whether a contract is against public policy there must be kept in view the rule that where there is no statutory prohibition the courts do not readily pronounce an agreement invalid on the ground of public policy or convenience but on the contrary are inclined to leave men free to regulate their affairs as they think proper * * * It has also been observed that the power to invalidate agreements on the ground of public policy * * * should be called into action to set aside or annul the solemn engagements of parties dealing on equal terms only in

cases where the corrupt or dangerous tendency clearly and unequivocally appears on the face of the contract itself, or is the necessary inference from the matters which are expressed, etc. * * * It is no doubt correct to say that while public policy forbids the enforcement of an illegal or immoral contract, it is equally insistent that those which are lawful * * * shall be enforced, etc."

R. C. Law, Contracts, vol. 6, page 710, No. 119.

We are of the opinion the exception should have been overruled, and it is therefore ordered that the judgment be avoided and annulled and that the exception of no cause or right of action be overruled, and the cause be remanded for further proceedings; defendant to pay the cost of appeal.