(78 South. 968)

No. 21817.

INTERSTATE TRUST & BANKING CO. v. LIQUIDATORS OF PEOPLE'S BANK & TRUST CO.

(May 27, 1918.)

*(Syllabus by Editorial Staff.)*

1. BILLS AND NOTES ☞326—SALE—WARRANTY OF GENUINENESS.

Where one bank taking over the assets of another agreed that, if it should renew any obligations taken over such renewal should be an absolute acknowledgment on its part that the note was worth its face value, with interest, etc., the contract nevertheless carried with it a condition that all notes taken over were genuine, since the seller of a note warrants its genuineness, even in the absence of indorsement.

2. CONTRACTS ☞147(2) — CONSTRUCTION — LANGUAGE AND INTENT.

The language of a contract controls where it is plain, but not where from the contract as a whole and the circumstances surrounding it the language imports a meaning manifestly not intended.

3. BILLS AND NOTES ☞324—SALE OF NOTES—FORGERIES—DUTY TO REIMBURSE.

Where one bank sold its assets to another in ignorance that two of the notes transferred were forgeries, on discovery of the fact, the seller bank should have reimbursed the buyer bank at once for the price paid for the notes, their forged character having disconnected them entirely from the contract, having reference only to genuine notes, so that reimbursement did not need to await the settlement to be made at expiration of the time allowed by the contract

for the collection of other notes, or for the liquidation of the transferred assets.

4. BILLS AND NOTES ⊘⟐324—SALE OF NOTES—WARRANTY OF GENUINENESS.

Where one bank bought the assets of another in ignorance of the fact that two of the notes transferred were forgeries, if any loss resulted from the act of the buyer bank in renewing or extending the notes, such loss must fall on the seller bank, and not on the buyer.

Appeal from Civil District Court, Parish of Orleans; Fred D. King, Judge.

Suit by the Interstate Trust & Banking Company against the Liquidators of the People's Bank & Trust Company. Judgment for defendant, and plaintiff appeals. Judgment set aside, exceptions of prematurity and no cause of action overruled, and case remanded for trial.

Howe, Fenner, Spencer & Cocke, of New Orleans, for appellant. E. J. Meral, William C. Dufour, H. G. Dufour, and George Janvier, all of New Orleans, for appellee.

PROVOSTY, J. The facts and issues of this case are clearly and succinctly stated in the brief of appellee as follows:

"During the early months of 1911, it became evident that the interests of the stockholders of the People's Bank & Trust Company, then a banking institution in this city, would be best served by the sale of the assets of the said banking company to some other banking institution doing business in this city. Conferences were had with the officers of the Interstate Trust & Banking Company of this city, and it was finally agreed that certain of the assets of the People's Bank & Trust Company, including the bank house and certain mortgage notes, bonds and other obligations, should be appraised by a committee appointed by the two institutions, and that the Interstate Trust & Banking Company should take over the said assets at the figure fixed by the said appraisement committee, and, in addition, should pay to the People's Bank & Trust Company a bonus of $37,500.

"The agreement was entered into on the 20th day of March, 1911, and a subsequent agreement was entered into on the 21st day of March, 1911, and under the two agreements, the Interstate Trust & Banking Company was to take over, and did take over, certain assets of the People's Bank & Trust Company, which assets were set forth in the list attached to the agreement of March 20th referred to.

The Interstate Trust & Banking Company further agreed to collect such of the obligations as were collectable, and to pay the depositors, and to take care of certain other listed obligations of the People's Bank & Trust Company.

"The agreement stipulated that should the collections on the said notes, mortgage notes, etc., produce a surplus over the appraised figure, then that this surplus should be turned over to the People's Bank & Trust Company.

"Among the listed assets were two notes of Mary Kane for $1,500 each. It is now alleged by plaintiff that these two notes, which were secured, or were supposed to have been secured, by mortgage passed before James J. Woulfe, were forgeries. Thereupon this suit was filed by the Interstate Trust & Banking Company against the liquidators of the People's Bank & Trust Company. Exceptions of no cause of action and of prematurity were filed and these exceptions were sustained by the trial court and are now before this court on appeal by plaintiff.

"The exception of no cause of action is based on the fact that the two notes referred to were renewed or extended by the Interstate Trust & Banking Company after the making of the agreement. Paragraph 5 of the agreement of March 21st reads as follows:

"'It is agreed by the Interstate Trust & Banking Company that in case it shall renew any obligation taken over from the People's Bank & Trust Company, that such renewal shall be an absolute acknowledgment on the part of the said bank, so far as the note is concerned, that it is well and truly worth the face value, with interest; that, on the other hand, should the Interstate Trust & Banking Company decline to renew a note, any losses incurred on that transaction shall be charged up to the People's Bank & Trust Company, to be secured by any excess of assets over liabilities taken over by the Interstate Trust & Banking Company.'

"The exception of prematurity is based on the admitted fact that no account has ever been rendered by the Interstate Trust & Banking Company to the liquidators of the People's Bank & Trust Company showing the status of collections made under the said agreements."

[1, 2] The notes which the one bank was selling and the other buying were supposed to be genuine, not forgeries. The contract necessarily carried with it the unexpressed condition that the notes were genuine. The seller of a note warrants its genuineness, even in the absence of indorsement. Pugh v. Moore, Hyams & Co., 44 La. Ann. 209, 10 South. 710; Massie v. Louque, 109 La. 775, 33 South. 764; 3 R. C. L. 380. To read the

above-quoted clause as intended to cover forgeries would manifestly be giving it a scope entirely beyond, and outside of, the intention of the parties. Very true, the language of a contract controls, where it is plain; but this is not true where from the contract as a whole and from circumstances surrounding it the language would import a meaning manifestly not intended. C. C. arts. 1945, and 1959. The rule in that connection is expressed in 6 R. C. L. 841, as follows:

"Accordingly it is said that the agreement of the parties is to be ascertained from the plain language used by them, and such agreement is to be enforced no matter what the intention may have been, and that where the meaning of a contract is plain, another meaning cannot be added by implication or intendment. This is the general rule, beyond a doubt, but such required literalism is not to be pushed to the preposterous length of requiring that by its operation the general intention of the parties, as evidenced by their contract itself, shall be frustrated or perverted, either in whole or in part. The terms employed are servants, and not masters, of a perspicuous intent; they are to be interpreted so as to subserve, and not to subvert, such intent. It is true that the intention of the parties to a contract cannot prevail if directly contrary to the plain sense of the words employed; but when the intention is sufficiently apparent, effect should be given to that intent though some violence is thereby done to the words. The intent of the parties, when manifest, or when ascertained from the contract, must control without regard to inapt expressions or the dry words of the contract, unless that intent is directly contrary to the plain sense of the binding words of the agreement. There can be no doubt that instruments should be liberally construed, so as to give them effect and carry out the intention of the parties. This rule does not seem to conflict with one of Pothier's rules of interpretation, which has been deemed to be consonant with the rules of the common law, that however general the terms may be in which an agreement is conceived, it only comprehends those things in respect to which it appears that the contracting parties proposed to contract, and not others they never thought of."

[3] As the result of their thus proving to be forgeries, or, in other words, mere nothings, the two notes sued on dropped out of the said contract and nothing remained to be done but for the seller bank to reimburse the price paid for them—paid through an error

143 La.—19

induced by ignorance of the true situation, a situation of which the seller bank was, indeed, equally ignorant, but from which it cannot profit, not to any extent whatsoever. This reimbursement should have been made at once, amicably. It not having been made, suit was properly brought to enforce it. The forged character of these two notes having disconnected them entirely with the contract (which has reference only to genuine notes), there can be no reason why the reimbursement of the price paid for them should await the settlement to be made at the expiration of the time allowed by the contract for the collection of the other notes, or for the liquidation of the transferred assets.

[4] It goes without saying that if any loss has resulted from the act of the plaintiff in renewing or extending said notes, such loss must fall on defendant and not be borne by plaintiff.

The judgment appealed from is set aside, the exceptions of prematurity and no cause of action are overruled, and the case is remanded for trial; appellee to pay the costs of this appeal.