169 So. 568

**BREMER v. LANE et al.**

No. 33728.

June 30, 1936.

C. W. Lane, Jr., and Barksdale, Bullock, Warren, Clark & VanHook, all of Shreveport, for appellant Lane.

Cook, Cook & Egan, of Shreveport, for appellee.

ODOM, Justice.

Bremer, the plaintiff, executed a mineral lease in favor of the defendant Lane on 80 acres of land in Caddo parish, for a consideration of $7,750. The lease contract and Lane's check for $7,750 were deposited in the First National Bank of Shreveport with an escrow agreement signed by the parties and accepted by the bank, the escrow agent. The deposit was made upon the following conditions recited in the escrow agreement:

"Party of the first part shall furnish and deliver abstract of title to the land described in said oil and gas sale or (and) assignment, within ten days from date hereof, showing good and merchantable title to said land to be vested in the party of first part and party of second part shall have said abstract examined and title to said land passed upon by a competent attorney within ten days from date said abstract is so delivered to the party of the second part. If said title is good and merchantable, then said bank shall release check of C. W. Lane to party of first part, and shall deliver said mineral deed thereof to party of second part immediately. The opinion of said attorney shall be in writing, and if he shall hold that said title is defective, then party of first part shall have reasonable time from the date of said attorney's opinion is delivered to him within which to cure said defects, and if he should fail to cure said defects then said sale (and) assignment thereof shall be delivered by said bank to party of the first part and said check of C. W. Lane shall be delivered by said bank to party of the second part immediately."

Bremer had the abstract prepared and submitted it to Lane's attorney, who promptly wrote an opinion in which he pointed out certain defects in the title to the land. He informed Bremer that he had advised his client that it would not be safe for him to accept the lease and surrender his check until the defects in the title were cleared up. Bremer did nothing to cure the defects in the title pointed out. Lane had the escrow agreement recorded in the conveyance records of the parish.

Bremer brought this suit to have the escrow agreement decreed null, void, and of no effect, alleging that the recordation of it in the conveyance records cast a cloud upon his title and that he could not dispose of his property while the agreement remained of record. He prayed that the recordation thereof be canceled and erased. From a judgment decreeing that the escrow agreement was null and void and ordering it canceled and erased from the records, Lane appealed.

The judgment was rendered on the petition to which the escrow was attached as a part thereof, and the answer of the defendant, which admitted all of plaintiff's allegations except those set out in paragraph 7. In paragraph 7 of the petition plaintiff alleged that the defects in his title pointed out by Lane's attorney were of such character that they could not be cured except by a lawsuit "or at the very great disadvantage of the petitioner."

Defendant in his answer denied that allegation.

The sum and substance of Bremer's contention is that he was not bound under the escrow agreement to cure or even attempt to cure the defects in the title pointed out by Lane's attorney; that it was purely optional with him whether he did or not; and that when Lane declined to accept his title, he, Bremer, was at liberty to withdraw from the agreement.

■ Counsel for Lane contend that Bremer was unconditionally bound under the escrow agreement to cure, within a reasonable time, the defects pointed out, even though to do so court proceedings were necessary. So that the sole question presented is this: Was Bremer bound under the escrow contract to take such steps as were necessary, in the opinion of Lane's attorney, to clear up the title?

The trial judge did not think so. Neither do we. The agreement says that the party of the first part, Bremer, shall furnish and deliver "abstract of title to the land described in the said oil and gas sale or (and) assignment, within ten days from date hereof, showing good and merchantable title to said land to be vested in the party of the first part."

It is argued by Lane's attorneys that this clause shows that it was Bremer's "primary obligation to deliver the property sold with good and merchantable title," and that "in order to comply with his obligation, it was necessary to perfect his title if he could possibly do so."

Such conclusion might reasonably be drawn if the above clause stood alone. But it does not. The agreement goes further and provides that the abstract should be delivered to Lane and examined by a competent attorney, selected, of course, by Lane, and "if said title is good and merchantable then said bank shall release check of C. W. Lane to party of the first part and shall deliver said mineral deed thereof to party of the second part immediately."

What that means, of course, is that in case Lane's attorney approved the title and so advised the bank, the escrow agent, the mineral lease should be delivered to Lane and Lane's check to Bremer, and the transaction would be closed. And it is further provided in the contract that if in the opinion of Lane's attorney the title was defective, then Bremer "should have reasonable time from the date said attorney's opinion is delivered to him within which to cure said defect, and if he should fail to cure said defects, then said sale (and) assignment thereof shall be delivered by said bank to party of the first part and said check of C. W. Lane shall be delivered by said bank to the party of the second part immediately."

In other words, if, in the opinion of Lane's attorney, Bremer's title was defective, then Bremer should have a reasonable time within which to cure the defects pointed out, and if he failed to cure them, the mineral lease should go back to Bremer and Lane's check go back to him, leaving the parties where they started.

Did Bremer's agreement bind him to cure or attempt to cure such defects in the title as Lane's attorney might find and point out? We do not think so. According to the escrow agreement, Bremer was given a reasonable time within which to do so, but he did not bind himself to do anything. Whether he should put forth efforts to meet Lane's demands or let the matter drop was purely optional with him. The language of the agreement can be construed in no other way. It says that if Bremer should "fail to cure said defects," then the escrow agent should deliver the mineral lease to Bremer and the check to Lane.

Counsel for Lane say in their brief that, "Failure by plaintiff to perfect his title implies an unsuccessful bona fide effort to do so. The word 'fail,' as used in that part of the contract quoted supra, does not mean inaction, nor is it synonymous with neglect or refusal." But the question as to what meaning the parties intended the word "fail" to have is not important, because Bremer did not bind himself to cure or to attempt to cure the defects in the title. Since he did not so bind himself, it matters not whether his failure resulted from inaction or arbitrary refusal to take any steps at all to clear up the title.

Counsel for plaintiff cite the case of Morrison v. Mioton et al., 163 La. 1065, 113 So. 456, 457. The case is not in point. Morrison, the plaintiff in that case, proposed to purchase certain real estate belonging to Mioton, "subject to homestead loan to be granted by Orleans Homestead Association." His offer was accepted by Mioton's agent and he made a deposit of $900. Subsequently he notified Mioton's attorney that he would pay the balance in cash without the assistance of the homestead association. Mioton refused to make the sale on the ground that the clause "terms cash; subject to homestead loan to be granted by Orleans Homestead Association," was a potestative condition and null.

It was held that the clause was not potestative because the execution of the contract did not depend solely upon Morrison's will, the intent being that he should purchase the property if he could obtain the loan, and since that was the intent, it was his "inescapable duty" to at least make an effort to secure the loan.

So in the case at bar if Bremer had obligated himself to cure defects in his title, it would have been his "inescapable duty" to do so if he could, but instead of his binding himself to do so, the escrow contract provided merely that he should have a reasonable time within which to cure the defects, and if he "failed" the mineral lease was to be delivered to him and the check to Lane, thus ending the negotiations.

■ The escrow agreement should, of course, be construed as a whole in order to arrive at the intent of the parties. The Civil Code says that, "All clauses of agreements are interpreted the one by the other, giving to each the sense that results from the entire act." Article 1955. It is argued by Lane's counsel that the written instrument as a whole shows that it

was intended that Bremer was to sell this mineral lease under good and merchantable title. Even so, that does not help Lane's cause. The title was not good in the opinion of his attorney. He refused to accept it, which was his right, and Bremer was not bound to make it good.

 Appellant filed in this court a motion to remand the case in order that he might show that the defects in the title were curable by simple, inexpensive judicial process, and attaches certified copies of certain pleadings and a judgment showing that as a matter of fact the defects have been cured by suit brought by Bremer since the present suit was filed. A remand would subserve no useful purpose, since Bremer was never bound to cure the defects.

For the reasons assigned, the judgment is affirmed.