FOURNET, Justice.
 

 The plaintiff instituted this suit under Act No. 38 of 1908 to'establish title to 30 acres of land located in what is known as the Eola Oil Field — being the west 30 acres of the E% of the NEJ4 of Section 6, Township 2 South, Range 3 East, Avoyelles Parish — alleging that the property was not in the actual possession of anyone but was being claimed by the heirs’ of Max Chamberlain and the heirs of Charles A. Knoll. The lessees of the several defendants were also made parties to these proceedings.
 

 In answer to plaintiff’s action the defendants Mrs. Emma C. Adair and Mrs. Elizabeth C. Baker asserted title to a half interest in the property by virtue of their inheritance from Max Chamberlain, who had acquired the same by deed from plaintiff’s father, James Murdock Murph, which interest, according to their allegation, had never been disposed of either by Chamberlain or by them. The remaining defendants, other than the lessees, likewise deraigning their title from plaintiff’s father since their ancestor, Charles A. Knoll, had acquired the property from Max Chamberlain, filed pleas of prescription acquirendi causa of ten and thirty years and also pleas of acquiesence, ratification, and estoppel.
 

 The trial judge, without passing on the pleas of acquiescence, ratification, and estoppel, overruled the pleas of prescription and adjudged the plaintiff to be the owner of an undivided half interest in the property, and the heirs of Charles A. Knoll to be the owners of the other half. The heirs of Chamberlain and the heirs of Knoll both obtained orders of appeal from this judgment, but only the heirs of Knoll perfected the same. After the appeal was lodged here, however, the Chamberlain heirs filed an answer asking that the judgment be amended so as to reject the claims of the Knoll heirs to the property in its entirety at their (the Knoll heirs’) cost, and that they (the heirs of Chamberlain) be decreed to be the owners in indivisión of a half interest in the property.
 

 The Knoll heirs contended, both orally and in brief, that the Chamberlain heirs, having failed to perfect their appeal, “cannot make themselves parties to this appeal by terming themselves appellees and filing a pretended answer to the appeal by these appellants from the judgment [appealed from].” (Brackets ours.)
 

 The record discloses that James Murdock Murph acquired title to Lot No. 1, or the E% of the NEJ4 of Section
 
 6,
 
 T. 2 S., R. 3 E., on August 10, 1870, from the descendants and heirs of the original patentee, and that on February 25, 1882, Lewis W. Murdock, by virtue of a power of attorney from Murph, executed a deed in favor of Max Chamberlain transferring, ' together with other property, an undivided half interest
 
 *631
 
 therein. Subsequently, on December 23, 1909, Chamberlain executed a deed to Charles A. Knoll covering his “entire holdings of land in Avoyelles Parish, State of La., and being more fully described as follows :• 1st. * * * 2nd. * * * 3rd. A certain tract of woodland * * * situated in the swamp between Bunkie and Eola and lying west of the Louisiana East and West Rail Road containing Thirty (30) acres more or less, and being bounded North by lands of Robert Tubre, South and East by lands of Robert D. Windes, and West by lands of Billy Moore.”
 

 It is admitted by all of the parties that the plaintiff is the sole and only heir of James Murdock Murph; that the defendants Mrs. Emma C. Adair and Mrs. Elizabeth C. Baker are the sole and only living heirs of Max Chamberlain, who died on April 28, 1912; and that the remaining defendants (not including the lessees), some forty-two in number, are the sole and only heirs of Charles A. Knoll, who died on February 11, 1933.
 

 Plaintiff now concedes that her father, by the deed of February 25, 1882, transferred to Chamberlain a half interest in the property in controversy. It is her contention, however, in which she is joined by the heirs of Chamberlain, that since the deed from Chamberlain to Knoll recites that the property is located in the swamps between Bunkie and Eola on the
 
 west
 
 side of the Louisiana East and West Railroad, when in fact the E% of the NE14 of Section 6, wherein the 30-acre tract in controversy is actually situated, is
 
 east
 
 of the railroad referred to, plaintiff’s interest in the property is not affected by the deed, and no evidence is admissible to alter or change her rights in the premises; that the only way in which this evidence could have been introduced would have been by an action to reform the deed on the ground of error or fraud, which action, she specifically pleads, is prescribed under Article 3544 of the Revised Civil Code. She further contends that the deed, being defective for want of proper description of the property, is not a deed translative of title sufficient to support the prescription acquirendi causa of ten years and, in the alternative, that - the Knoll heirs have failed to .prove the possession necessary to establish title by prescription according to the requirements of the Revised Civil Code and the jurisprudence thereunder.
 

 On the other hand, the Knoll heirs, claiming title to the property in controversy by virtue of the deed from Chamberlain to Knoll, contend: (1) That although the act of sale from plaintiff’s ancestor to their author in title (Chamberlain) specifically declares only a half interest in the property is being conveyed to Chamberlain, he, nevertheless, became the owner of the other half interest in the property, since it is stipulated in the final clause of the act of conveyance that “All the lands in the said Parish belonging to James Murdock Murph, whether described in this sale or not, are hereby transferred to the said Max Chamberlain;” (2) that at the time Chamberlain acquired from Murph a half interest in the 80-acre tract of land (Lot No. 1, E% of NE Section 6, T. 2 S., R. 3 E.) his vendor had previously donated 50 acres thereof
 
 *633
 
 to Lewis Murdock and by a partition had between Chamberlain and the purchaser at a syndic sale of the property donated to Murdock, Chamberlain took the west 30 acres (being the property described in the deed by boundaries from Chamberlain to Knoll) and Rawlins, the purchaser at the syndic sale, took the remaining 50 acres to the east; (3) that the plaintiff is estopped from asserting title to any interest in the property for the reason that she and her father had, by their silence and inaction over a long period of years, acquiesced in Chamberlain’s actions and ratified Knoll’s title to the entire tract conveyed by Chamberlain ; and (4) that in the alternative they claim title by virtue of the prescriptions of ten and thirty years acquirendi causa.
 

 “Generally speaking, the cardinal rule in the interpretation of contracts is to ascertain the intention of the parties and to give effect to that intention if it can be done consistently with legal principles. * * * In other words, the object to be attained in construing a contract is to ascertain the meaning and intent of the parties as expressed in the language used.” 6 R.C.L., Permanent Supplement Edition, 834, Section 225. With further reference to the interpretation of contracts, see, also, Articles 1945, 1950, 1951, 1955, and 1959 of the Revised Civil Code, and the following authorities; Delogny v. David, 12 La.Ann. 30; Larguier v. White, 29 La.Ann. 156; Ker v. Evershed, 41 La.Ann. 15, 6 So. 566; Succession of Bellande, 42 La.Ann. 241, 7 So. 535; Lozes v. Segura Sugar Co., 52 La.Ann. 1844, 28 So. 249; Bender v. Chew, 129 La. 849, 56 So. 1023; Interstate Trust
 
 &
 
 Banking Co. v. Liquidators of People’s Bank & Trust Co., 143 La. 574, 78 So. 968; Bank of Napoleonville v. Knobloch & Rain-old, 144 La. 100, 80 So. 214; Rodgers v. S. H. Bolinger Co., 149 La. 545, 89 So. 688; Clement v. Dunn, 168 La. 394, 122 So. 122; Boisseau v. Vallon & Jordano, Inc., 174 La. 492, 141 So. 38; Smith v. Chappell, 177 La. 311, 148 So. 242; South Port Corp. v. Olivier & Sons, 179 La. 233, 153 So. 825; General Talking Picture Corp.
 
 v.
 
 Pine Tree Amusement Co., 180 La. 529, 156 So. 812; Union Tank Car Co. v. Louisiana Oil Rfg. Corp., 184 La. 121, 165 So. 638; Bremer v. Lane, 185 La. 543, 169 So. 568; Gibson v. Zylks, 186 La. 1043, 173 So. 757; Noel Estate v. Kansas City Southern & Gulf Ry. Co., 187 La. 717, 175 So. 468; Reynaud v. Bullock, 195 La. 86, 196 So. 29; 16 American Jurisprudence 599, Section 285; 13 Corpus Juris 520, §§ 481, 482, 486, 497, 17 C. J.S., Contracts, §§ 294, 295, 297, 309; 13 Cyc. page 601, § 1 (c), page 627, (e); and 6 R.C.L. 837, Sections 227, 231.
 

 It is expressly provided in the Revised Civil Code “That courts are bound to give legal effect to all such contracts according to the true intent of all the parties” and this “intent is to be determined by the words of the contract, when these are clear and explicit and lead to no absurd consequences.” Article 1945.
 

 It therefore follows that we must endeavor to ascertain the intention of the parties, if possible, in order to dispose of the contention urged by the Knoll heirs to the effect that plaintiff’s author in title, James M. Murph, by the inclusion of the general clause above quoted, transferred,
 
 *635
 
 in addition to the property specifically described in the act, all other lands owned by him in Avoyelles Parish, which necessarily included the other half interest in Lot No. 1, not specifically transferred in the third clause of the deed.
 

 It is the general rule that: “Where a particular and a general description in a deed conflict, and are repugnant to each other, the particular will prevail unless the intent of the parties is otherwise manifested on the face of the instrument.”
 
 72
 
 A.L. R. 410. For other authorities on this point, see, also, Sabatier v. Bowie Lbr. Co., 129 La. 658, 56 So. 628; Bender v. Chew, 129 La. 849, 56 So. 1023; In re Liquidation of Mitchell-Borne Const. Co., 145 La.
 
 379, 82
 
 So. 377; Mixon v. St. Paul Fire & Marine Ins. Co., 147 La. 302, 84 So. 790; Olivier v. Board of Commissioners, 177 La. 157, 148 So. 12; Williams v. James, 188 La. 884, 178 So. 384; Sun Oil Co. v. Burns, 125 Tex. 549, 84 S.W.2d 442; 16 American Jurisprudence 600; Steen v. Modern Woodmen of America, 296 Ill. 104, 129 N.E. 546, 17 A.L.R. 410; 115 A.L.R. 192; 111 Am.St.Rep. 776; 16 Century Digest 389, Deeds, § 319; Decennial Digests, Deeds, ®=>114(1); 18 Corpus Juris 284, Sections 254, 263; and 13 Cyc. 629(c), 631(e).
 

 We are unable to decide with any degree of legal certainty the intention of the parties in the instant case. The record shows that Murph was represented by Lewis Murdock by power of attorney in the execution of the deed to Chamberlain dated February 25, 1882, Murph being then in the state of Texas/ The power of attorney, however, does not contain a general clause such as is found in the deed to Chamberlain, but it does give Murdock the authority to sell the property in controversy under the following description: “Eighty acres bounded North and East by the Estate of Frith, West by R. D. Winds.” In order for us to conclude that it was Murph’s intention to transfer the whole of the property, after he had specifically transferred a half interest only, because of the inclusion of the general clause, we would be forced to resort to speculation and conjecture to ascertain the reason for the specific conveyance of a half rather than a whole interest. This we may not do, particularly since both parties to the act have since died and have left no other acts by which we might be guided in interpreting their intention. Ker v. Evershed, 41 La.Ann. 15, 6 So. 566; Lawrence v. Young, 144 La. 1, 80 So. 18; and Hargrove v. Hodge, 9 La.App. 434, 121 So. 224. The record shows that Chamberlain never took possession of the property. Moreover, we are led to believe that Chamberlain did not consider himself the owner of the entire 80-acre tract of land, for there is some evidence in the record to the effect that prior to the time he sold the tract in controversy to Knoll he and Rawlins, the vendee at the syndic sale of Murdock’s property, had a survey made of the entire tract with a view of partitioning the property, Chamberlain to take the west 30 acres and Rawlins the east 50.
 

 The next contention urged by the Knoll heirs is also without merit, for a mere reading of the act of donation from
 
 *637
 
 Murph
 
 to
 
 Murdock leaves no doubt that the description of the 50 acres therein referred to does not form a part of the E% of the NE]4 of Section 6, T. 2 S., R. 3 E., Avoyelles Parish. Furthermore, it is not claimed that there was an actual partition of the 80-acre tract between Murdock and Chamberlain in conformity to the requirements of the law, hence no evidence was admissible to establish one.
 

 The pleas of estoppel, ratification, and acquiescence, which are based on the long silence and inaction of the plaintiff and her ancestor, are equally unimpressive, for one can never be divested of his title to property except in the manner prescribed by law. Pearce v. Ford, 124 La. 851, 50 So. 771; Long v. Chailan, 187 La. 507, 175 So. 42; and Gibson v. Pickens, 187 La. 860, 175 So. 600.
 

 This leaves for our consideration the prescriptions of ten and thirty years acquirendi causa pleaded by the Knoll heirs.
 

 The prescription acquirendi causa of ten years is based on Article 3478 of the Revised Civil Code, as amended by Act No. 161 of 1920 and Act No. 64 of 1924, which provides that “he who acquires an immovable in good faith and by just title prescribes for it in ten years. * * * ”
 

 The good faith referred to in Articles 3478 and 3479 is treated in the chapter of the Revised Civil Code entitled “Of Possession.” In that chapter “the possessor in good faith” is defined to be “he who has just reason to believe himself the master of the thing which he possesses, although he may not be in fact, as happens to him who buys a thing which he supposes to belong to the person selling it to him, but which, in fact, belongs to another.” Article 3451. See, also, Article 3484; Fletcher v. Cavalier, 4 La. 267; McCluskey v. Webb, 4 Rob. 201; Hall & Turner v. Mooring, 27 La.Ann. 596; Pattison v. Maloney, 38 La.Ann. 885; New Orleans Auction-Exchange v. Vincent, 168 La. 802, 123 So. 331; Land Development Co. v. Schulz, 169 La. 1, 124 So. 125; Trcka v. Bragmans Bluff Lumber Co., 174 La. 631, 141 So. 81; Kees v. Louisiana Central Lbr. Co., 183 La. 111, 162 So. 817; Ruth v. Buwe, 185 La. 204, 168 So. 776; Soule v. West, 185 La. 655, 170 So. 26; Garner v. Sims, 191 La. 289, 290, 185 So. 27; and Keller v. Summers, 192 La. 103, 187 So. 69. A just title is defined as “a legal and transferable title of ownership in the possessor.” Article 3483. See, also, Articles 3484 and 3486; Dufour v. Camfranc, 11 Mart., O.S. 675; Morand’s Heirs v. City of New Orleans, 5 La. 226; Pattison v. Maloney, 38 La.Ann. 885; Johnson v. Sugar, 163 La. 785, 112 So. 721; and Smith v. King, 192 La. 346, 188 So. 25. But “to enable one to plead the prescription treated of in this-paragraph [the division dealing with the prescription acquirendi causa of ten years], it is necessary that the possession be distinguished by the following incidents: 1-That the possessor shall have held the thing' in fact and in right, as owner * * *. 2„ That the possession shall have been continuous and uninterrupted, peaceable, public and unequivocal * * *.” Article 3487. (Brackets ours.) See, also, Ellis v. Prevost, 19 La. 251; Prevost v. Ellis, 11 Rob. 56; Screen v. Trainor, 172 La. 51,
 
 *639
 
 133 So. 359; Kees v. Louisiana Central Lbr. Co., 183 La. 111, 162 So. 817; Tyson v. Spearman, 190 La. 871, 183 So. 201; Keller v. Summers, 192 La. 103, 187 So. 69; and 12 Tulane Law Review 608.
 

 “The law does not require that a deed, to support the prescription of 10 years, shall contain such a description that the land can be identified without reference to other records. Article 3479 of the Civil Code requires merely ‘a title which shall he legal, and sufficient to transfer the property.’ Article 3483 declares that, to support the prescription of 10 years, ‘a legal and transferable title of ownership in the possessor is necessary; this is what is called in law a just title.’ Article 3484 declares that the term ‘just title’ does not mean a title from the owner, but a title from any person whom the purchaser honestly believed to be the true owner, ‘provided the title be such as to transfer the ownership of the property.’ Article 3485 defines the phrase ‘transfer the ownership of the property’ as meaning, ‘not such a title as shall have really transferred the ownership of the property, but a title which, by its nature, would have been sufficient to transfer the ownership of the property, provided it had been derived from the real owner.’ And article 3486 declares that, to support the plea of prescription of 10 years, the title must be certain; that is, it must fix exactly the origin or basis of the possession. Article 3437 declares that it is sufficient for a person wishing to take possession of an estate to enter upon and occupy a part of the land, provided it be with the intention of possessing all that is included within, the boundaries. The word ‘boundaries,’ in that article, means the limits or marks of inclosures if the possession be without title, or the boundaries or limits stated in the title deed if the possession be under a title. * * * ” Leader Realty Co. v. Taylor, 147 La. 256, 84 So. 648, 650.
 

 The good faith of Knoll and his heirs is not in dispute in this case but it is claimed by the plaintiff, in which she is joined by the heirs of Chamberlain, that the deed is not translative of title because the description is so defective it is impossible to identify the property.
 

 A reference to the deed will show that Chamberlain, in transferring the property, did not describe it by governmental subdivisions, but, instead, described it as lying to the west of the Louisiana East and West Railroad and bounded by the lands of Robert Tubre on the north, of Robert D. Windes on the south and east, and of Billy Moore on the west.
 

 It is the settled jurisprudence of this state that a deed, in order to be translative of title to real estate, must contain such a description as to properly identify the property. Bryan v. Wisner, 44 La. Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; McMillian v. Louisiana Mfg. & Mercantile Co., 125 La. 854, 51 So. 1013; Castera’s Heirs v. New Orleans Land Co., 125 La. 877, 51 So. 1021; Suthon v. Laws, 127 La. 531, 53 So. 852; Bendernagel v. Foret, 145 La. 115, 81 So. 869; McHugh v. Hanson Lumber Co., 145 La. 421, 82 So. 392; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Baldwin v. Arkan
 
 *641
 
 sas-Louisiana Pipe Line Co., 185 La. 1051, 171 So. 442; and Harrill v. Pitts, 194 La. 123, 193 So. 562. However, when the Knoll heirs sought to introduce evidence to identify and locate the property, the plaintiff and the Chamberlain heirs objected to its introduction, assigning as their reason that since it is recited in the deed the property being conveyed lies to the west of the Louisiana East and West Railroad, no evidence is admissible to show that the land, in fact, lies to the east of the railroad. It is their contention that such evidence is admissible only for the purpose of reforming the deed, which right has prescribed under the provisions of Article 3544 of the Revised Civil Code.
 

 This court, in the well considered opinion in the case of Louisiana Oil Refining Corporation v. Gandy, 168 La. 37, 121 So. 183, held that the right to reform a deed is a personal action and is barred by the prescription of ten years established by Article 3544 of the Revised Civil Code. See, also, Gautreaux v. Harang, 190 La. 1060, 183 So. 349; Mims v. Sample, 191 La. 677, 186 So. 66; and State ex rel. Bourgaux v. Fontenot, 192 La. 95, 187 So. 66.
 

 Answering this contention, the Knoll heirs claim the testimony was not offered for the purpose of reforming or changing the deed, but, rather, for the purpose of identifying and locating the property transferred in accordance with the intention of the parties as evidenced by the recitals in the deed itself.
 

 It is a settled rule of law in this state that if a portion of the description of property in a deed is either erroneous or misleading, it is nevertheless susceptible of conveyance if the property intended to be conveyed by the parties can be ascertained with certainty by the aid of such extrinsic evidence as is admissible under the rules of evidence. Thornhill v. Burthe, 29 La.Ann. 639; Bryan v. Wisner, 44 La.Ann. 832, 11 So. 290; Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386; Suthon v. Laws, 127 La. 531, 53 So. 852; Suthon v. Viguerie, 127 La. 538, 53 So. 855; Bayard v. Baldwin Lumber Co., 157 La. 994, 103 So. 290; Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489; Harrill v. Pitts, 194 La. 123, 193 So. 562; 13 Cyc. 627; and 36 Cyc. 591. And “a deed, which was sufficient to convey property as between parties thereto * * * would be sufficient * * * basis upon which to rest plea of prescription of 10 years.” Harrill v. Pitts, supra.
 

 In the case of Willis v. Ruddock Cypress Co., 108 La. 255, 32 So. 386, 388, the plaintiff instituted suit to recover certain property which the defendant claimed had been adjudicated to the state for unpaid taxes and that he had obtained title thereto under a patent issued by the state to one W. R. Rutland. The plaintiff raised the issue there, as the plaintiff is doing here, that the land adjudicated by the state at the sheriff’s sale was not the same land which he was seeking to recover. The court found as a’ matter of fact that the description of the land in the deed agreed with the description of the property in name, boundaries, and acreage, but that it had been described as being in Township 10, Range 8, whereas it was actually sit
 
 *643
 
 uated in the 7th Range of Township 10. The court in deciding this issue said:
 

 “That this is an immaterial error is not debatable in the light of past adjudications of this court bearing on errors in descriptions according to government surveys. Error in the range has time and again been held immaterial where by the other parts of the description, and even by competent proof aliunde, the land was identified,” citing the case of Bryan v. Wisner, 44 La.Ann, 832, 11 So. 290, and the cases therein referred to.
 

 In the case of Thornhill v. Burthe, 29 La.Ann. 639, quoted with approval in the Wisner case, supra, this court held that: “If the description of a tract of land * * * informs the public what property is covered by it, without stating the township or other divisions, it will be sufficient * * *, as, for example, where it is described as being on a particular river in a named parish, adjoining named proprietors * * *, or the bayou upon which it is situated is named with the parish, with the number of acres it contains, and reference is made to the conveyance by which the mortgagor acquired it. * * * if a part of the description would mislead, it must be read with and be controlled by other parts which explain it. The error * * * in the description * * * was cured by other descriptive parts thereof,, which left no doubt of the particular tract that was intended to be mortgaged.”
 

 This court in the case of Tircuit v. Burton-Swartz Cypress Co., 162 La. 319, 110 So. 489, 492, said: “* * *
 
 it suffices if the description be 'such as to enable the court to determine with certainty, with the aid of such extrinsic evidence as is admissible under the rules of evidence, what property was intended by the parties to be covered thereby. The description need not be given with such particularity as to make a resort to extrinsic evidence unnecessary,’ ”
 
 quoting with approval from 36 Cyc. 591. (Italics ours.)
 

 In the case of Suthon v. Laws, 127 La. 531, 53 So. 852, 854, one of the contentions urged was that the description in the deed was insufficient to convey the property in question because of a mistake in the name of the owner or owners of the land bordering the property on the south. The court held that: “The description in the act of sale by Mrs. Caroline Brownson’s agent to Wm. F. Weeks was clearly sufficient to transfer this property. All the lands of Mrs. Caroline Brownson contained within the boundaries given were conveyed. These boundaries were: Bayou Teche on the west; the Fuselier plantation on the north; Grand Lake on the east; and the Mallon plantation on the south. The S.E.
 
 Yi
 
 of section 25, the land in litigation, was embraced within that description. True, the Mallon plantation did not go the entire distance to Grand Lake, but we do not see that that makes the slightest difference. The sale was of all the lands of Mrs. Caroline Brownson in that locality as far west as Bayou Teche; as far north as the Fuselier plantation; as far east as Grand Lake; and as far south as the Mallon plantation and the other lands bordering the land of Mrs. Caroline Brownson on the south.”
 

 
 *645
 
 Edward B. Messick, who has been doing abstracting, surveying, and notarial work in Avoyelles Parish for the past 20 years and is at present the official surveyor of the parish, testified that from the description as given in the deed from Chamberlain to Knoll he was able, by abstracting and surveying the remaining portion of the E% of the NE%. of Section 6, T. 2 S., R. 3 E.', to definitely locate and identify the property in controversy. In answer to the question as to how and why he made the location as shown on the plat drawn up by him, he replied: “We have, first, to start with the boundary as is given on the west; as west of the La. E. & W. R. R. I find from my knowledge of the territory gained in my abstracting work for the last twenty years, that there is no description conveying any property to C. A. Knoll that would place the property anywhere but in Section Six (6), according to the boundaries as given in the deed. When the word ‘west’ is used it is directly contrary to the boundaries. * * * Taking the boundaries, for instance, and not using the words ‘west of the La. E. & W. Railroad,’ we have, ‘on the north by lands of Robert Tubre; on the south and-east by lands of Winds; on the west by lands of Billy Moore.’ It is to my personal knowledge that Robert Tubre owned property on the north. I surveyed and cut out the various tracts of land he had sold and abr stracted all of it and determined he did own property on the north. On the west of this particular tract of eighty acres is the land of Billy Moore. I abstracted the title, — his name is Thaddeus Moore — and I know he owned in the West Half of the Northeast Quarter (W% of NE%) of Section Six (6). The.boundary on the north is correct, within a few years. On the west it was correct. The only error appearing is where it said, ‘on the south and east by Winds.’ There is a fifty acre tract which separates this particular tract from that of Winds but still puts the thirty acre tract in Section Six (6). From the boundaries given it appears then that there is thirty acres situated in the East Half of the Northeast Quarter (E% of NE^,) of Section Six (6), the boundaries given being ‘on the north by Robert Tubre, on the south by Winds, east by Winds, west by Billy Moore.’ That definitely puts the thirty acres in the East Half of the Northeast Quarter (E% of NE^4) of Section Six (6). * * * Therefore, by eliminating the uncertain parts and taking the certain parts, from surveys I have made of the various portions of Section Six (6), bringing the chain of title down to date, I identify this particular tract of thirty acres.”
 

 The record is replete with the testimony of persons either residing in the vicinity of the 30-acre tract in controversy or owning property there — including that of Mayo Glaze and Boze Cunnigan, two of the witnesses who testified on behalf of the Chamberlain heirs, whose claims are adverse to those of the Knoll heirs — who recognized Knoll as the owner of the property and dealt with him accordingly.
 

 We are of the opinion that the property as described in the deed was susceptible of location and identification, making the deed translative of title and subject to the prescription of ten years acquirendi causa.
 
 *647
 
 The fact that it was recited in the deed that the property was located to the west instead of to the east of the Louisiana East and West Railroad is immaterial since other descriptive designations of the property in the conveyance leave no doubt as to the particular tract intended to be sold by Chamberlain to Knoll.
 

 Under the express provisions of the Revised Civil Code for one to acquire an immovable in good faith and by just title under the prescription of ten years acquirendi causa (Articles 3478-3498) it is necessary that he “shall have held the thing in fact and in right, as owner” and that his “possession shall have been continuous and uninterrupted, peaceable, public and unequivocal.” Article 3487. When the person has once acquired this possession “by the corporal detention of it [the immovable], the intention which he has of possessing, suffices to preserve the possession in him, although he may have ceased to have the thing in actual custody, either himself or by others” (Article 3442, as amended by Act No. 87 of 1871), and “This intention of retaining possession is always supposed, where a contrary intention does not appear decidedly * * * ” (Article 3443), and the possession necessary under these provisions of the code depends upon the nature and character of the land. Chamberlain v. Abadie, 48 La.Ann. 587, 19 So. 574; Boagni v. Pacific Imp. Co., 111 La. 1063, 36 So. 129; and Martel v. Hunt, 195 La. 701, 197 So. 402. (Brackets ours.)
 

 The 30-acre tract of land involved in this suit at the time of the transfer from Chamberlain to Knoll in 1909, was virgin timberland in the swamp between Eola and Bunkie and the Knoll heirs, to support their title by prescription, rely on evidence which shows that the possession of Knoll was begun by the cutting and removal of all of the ash timber on the tract in 1916, and by a like cutting and removal of all of the elm timber in 1917, followed by other acts indicating Knoll’s intention to continue this possession.
 

 A review of the testimony reveals that Thaddeus Moore (also known as Billy Moore), after purchasing from Knoll in 1916 all of the merchantable ash timber located on this tract, about 15,000 feet, put a crew of men and teams on the property and spent some thirty days in cutting and removing the same, being rushed for time because of an immediate demand for the lumber. This timber was sold to Judge Haley of Bunkie. Again in 1917, having purchased the elm timber on the property from Knoll, Moore cut and removed all of it — approximately 35,000 feet, which he sold to the Crescent and Hoop Company of Alexandria, Louisiana — and leaving on the property only “some oak and a few cypress trees” which Knoll would not let him .have. Not being pressed for time on this occasion, these operations continued Over a period of some sixty days. Later, in 1918, Moore cut down one of the cypress trees and worked it into shingles at the specific request of Knoll. He testified that at the time he began his first logging operations on the property all of the timber was of virgin growth. In addition to these logging operations on the tract, Moore, having secured the permission of Knoll, used the tract of land for some two years as a corral for the
 
 *649
 
 teams he used in his logging business in the vicinity. That Moore was well acquainted with the tract of land is evident. He was approximately 64 years of age at the time of the trial and had lived in the vicinity of the property in dispute for some 50 years, himself owning the property immediately adjoining the Knoll tract to the west from 1901 to 1918. He had not only built a fence along the western boundary of the property to separate his tract from the Knoll property, but had also built the fence . on the eastern boundary, having been employed for this specific purpose by the then owner of the land adjoining to the east, Joe Imgrabuilo. He testified that while he did not build the fence separating the tract in controversy from the land on the north owned by Robert Tubre, he personally knew Tubre had built the fence himself.
 

 His testimony is amply corroborated. Pete Simmons testified he was associated with Moore in the cutting and logging of the timber in 1916 and 1917. Sam Cerami, who was well acquainted with the land, having lived in the vicinity for 40 years and being the present owner of the property formerly owned by Moore on the west, testified that he had not only seen Knoll on the property on a number of occasions and tried, unsuccessfully, to purchase the property from him, but that he had also seen Moore removing the timber therefrom. Richard Valentine, who purchased from Knoll such timber as was growing on the land in 1931, testified that when he began to cut this timber in 1932 the only evidences of the former virgin timber were the numerous stumps and scrap timber left. Max M. Merrick, a civil engineer in Avoyelles Parish, testified that when he was surveying the tract in 1939 he found evidence indicating the virgin timber had been removed, leaving only stumps. Cletus J. Gremillion, who leased the Knoll farm near Bunkie during the years 1928, 1929, and 1930, testified that when he went on the tract to cut the wood necessary to operate this plantation under the permission granted him by Knoll, he found evidence of the removal of the virgin timber from the property.
 

 But counsel for the plaintiff contends that because there is evidence in the record showing Knoll never had the property assessed nor paid taxes on the same, and because his heirs, in dealing with his estate, failed to have the same surveyed and included in the inventory of Knoll’s succession, when taken together with the fact that there is also some evidence showing people cut wood on the property indiscriminately from time to time, Knoll’s possession under these circumstances was not sufficiently “adverse, continuous and uninterrupted, peaceable, public and unequivocal” to support the prescription of ten years acquirendi causa.
 

 We have already demonstrated that under the express provisions of the Revised Civil Code and the jurisprudence thereunder, once the corporeal possession of property has begun, civil possession will be sufficient to keep the prescription running for the remaining portion of the ten years, and while the assessment of the property by one who claims the'ownership thereof and his payment of taxes thereon
 
 *651
 
 is evidence to show the
 
 intention
 
 of the party to claim and possess the property as owner, we know of no law, and none has been cited, showing that it is necessary to have property assessed in the name of the possessor and to have the taxes paid by him in order to acquire property by prescription. Of course, the fact that the Knoll heirs did not survey and inventory the property for inclusion in the succession of their ancestor could not destroy the title acquired by him under the prescription of ten years which had run in his favor. For an exfcellent dissertation on the subject under consideration here, see Volume 12 of the Tulane Law Review, p. 608.
 

 Under the jurisprudence of this state, occasional and indiscriminate cutting of wood or timber does not constitute possession sufficiently adverse to support the plea of prescription. By the same parity of reasoning, actual adverse corporeal possession which has already begun to run and is presumed to continue during the remainder of the period in which the title is prescribing unless a decided contrary intention appears, cannot be destroyed by the occasional and indiscriminate cutting of wood and timber by others, particularly since the testimony on this point fails to show that these persons were claiming the ownership of the tract of land or were in any way contesting Knoll’s title.
 

 We are therefore of the opinion that the trial judge erroneously overruled the plea of prescription of ten years acquirendi causa filed by the Knoll heirs.
 

 Having reached this conclusion, it is unnecessary for us to pass on the prescriptive plea of thirty years and the contention that the Chamberlain heirs are not properly before this court.
 

 For the reasons assigned the judgment of the lower court is amended so as to decree the heirs of Charles A. Knoll to be the owners of the property in controversy in its entirety, and, as thus amended, the judgment is affirmed, plaintiff to pay all costs.
 

 O'NIELL, C. J.,
 

 is of the opinion that the plea of prescription of ten years should not prevail, and hence that the judgment appealed from is correct.
 

 ROGERS, J., absent.