CULPEPPER, Judge.
This is a concursus proceeding. The plaintiff owns oil leases covering 4.93 acres of land included in a unit from which production has been obtained. It deposited in the registry of the court royalties attributable to the 4.93 acres and cited as adverse claimants to the royalties and to the ownership of the land two groups of persons hereinafter referred to respectively as the Villejoin Group and the Hayes Group. The district judge found the Hayes Group owns the property and rendered judgment accordingly. The Villejoin Group appealed.
The issues are: (1) Were either the Ville-join Group or the Hayes Group in possession of the 4.93 acres in dispute for more than a *995 year prior to the time this concursus proceeding was filed on March 19,1974? (2) If either group was in possession, did the adverse group make out their title within the meaning of LSA-C.C.P. Article 3654? (3) Did the Villejoin Group prove ownership by the acquisitive prescription of 10 years?
The general facts are that the Villejoin Group and the Hayes Group own adjacent farms in a rural area in Lafayette Parish. The Villejoin farm contains approximately 41 acres, including the 4.93 acres in dispute. This farm fronts on the west side of a public road and runs back in a westerly direction to Bayou Queue De Tortue. The front portion of the farm has for many years been used by the Villejoin Group as a home and to raise rice and other row crops. The back portion of the farm near the woods along the bayou has been used for pasture. The 4.93 acres in dispute is located on the extreme west end of the farm in a bend of the bayou. It is bound on the north and on the west by Bayou Queue De Tor-tue. . It is bound on the east by the section line between Sections 29 and 28, TIOS, R2E, but there is no fence or other enclosure along this section line separating the 4.93 acres from the remainder of the farm. The 4.93 acres is bound on the south also by Bayou Que De Tortue, except for a space of about 30 feet between the bayou and the section line.
The Hayes property is located south of the 4.93 acres in dispute. They claim they have always had access to and maintained possession of the 4.93 acres through the narrow 30-foot space between Bayou Queue De Tortue and the section line. The Hayes Group claim ownership of the property in dispute by record title to a tract of land described as 20 acres more or less located in Section 29, in which section the 4.93 acres is located.
The Villejoin Group contend they have possessed the 4.93 acres for over 30 years as part of their back pasture which has been completely enclosed. They say that access by the Hayes Group through the narrow space of 30 feet between the bayou and the section line has been blocked for over 30 years by an intake ditch to a rice irrigation pump and by fences, the first of which was erected more than 30 years ago for the purpose of separating the Villejoin pasture from the Hayes land. The Villejoin Group claims ownership by the acquisitive prescription of 10 years under a 1944 deed to the defendant, Areson J. Villejoin, from his father, Jules Villejoin, and from his brothers and sisters, following the death of their mother.
POSSESSION
Under LSA-C.C.P. Article 3654, when the issue of ownership of immovable property is presented in a concursus proceeding, the court shall render judgment in favor of the party: “(1) Who would be entitled to the possession of the immovable • property or real right in a possessory action, unless the adverse party makes out his title thereto; or (2) who proves better title to the immovable property or real right, when neither party would be entitled to the possession of the immovable property or real right in a possessory action.”
Under Article 3654, the first question which we must decide is whether either the Villejoin Group or the Hayes Group had possessed the property in dispute for more than a year prior to the time this concursus proceeding was filed on March 19, 1974. We ultimately conclude the evidence is overwhelming that the property was possessed by the Villejoin Group.
Areson J. Villejoin, who is now 76 years of age, testified that he and his brothers and sisters were raised on the Villejoin farm. In 1944 he bought the farm from his father and his brothers and sisters. He lived on the property, using the front portion to grow rice and other row crops and the rear portion next to the bayou for pasture for his cattle and sheep. This rear pasture included the 4.93 acres which is on the extreme west end of the farm, next to the bayou. Mr. Villejoin testified that many years ago this back pasture was not enclosed and was used as open range by *996 cattle in the area. However, before be bought the property from his father in 1944, the pasture was enclosed by a fence and by an intake ditch or canal from the bayou to a pump which was used to irrigate the rice crops. Of course, there is no question that the entire pasture, including the 4.93 acres in dispute was enclosed by Bayou Queue De Tortue on the north and west and by the remainder of the Villejoin property on the east. The only question as to whether the property was completely enclosed relates to the narrow strip of about 30 feet between Bayou De Tortue and the line between Sections 28 and 29.
Mr. Areson Villejoin testified positively that before he bought the property from his father in 1944 this 30-foot strip, which is bounded on the south by the Hayes property, was closed off by the intake ditch for the pump and by a fence which was originally built by his father. Mr. Areson Ville-join also testified that after he purchased the property from his father, he put sheep in the pasture, and in order to keep these sheep from straying onto adjoining lands, he built a small dam to keep water in the ditch and also built a fence along the top of this dam. He says this dam and fence completely enclosed his pasture and denied any possible access from the Hayes property to the 4.93 acres in dispute.
This portion of the testimony of Mr. Are-son Villejoin is corroborated by his brother, Mr. Eugene Villejoin, by his son, Mr. Ozaun Villejoin, by his daughter, Mrs. Wally Fon-tenot, by his daughter, Mrs. Eddie Simo-neaux, and by her husband, and by his aunt, Mrs. Aymond Thibodeaux. These witnesses all testified that they either lived on or were thoroughly familiar with the Villejoin farm and that more than 30 years ago the dam and the fence were in existence enclosing the pasture, including the 4.93 acres in dispute.
Mr. Lovelace Thibodeaux testified that in about 1962 he leased the rice land from Mr. Areson Villejoin, but at that time Mr. Ville-join retained the use of the pasture for his cattle. Then in 1965, Lovelace bought Mr. Villejoin’s cattle, about 20 head, and leased the pasture for $200 a year. When this concursus was filed, Lovelace Thibodeaux was still leasing the pasture and keeping about 20 head of cattle in it. He testified positively that since he had known the property, the pasture had been completely enclosed, and that there was no access to that pasture by any cattle owned by the Hayes Group or any one else.
Mr. Frank Lyman testified as to a survey which he made in March of 1975 in preparation for this trial. This plat shows the existing intake canal and a fence separating the Villejoin pasture from the Hayes land.
The only evidence which even seeks to contradict the above testimony showing possession in the Villejoin Group, is the testimony of the Hayes brothers. Mr. Julius Hayes, who is now 61 years of age, testified that in about 1930 his father and Mr. Jules Villejoin had a dispute of some kind about the property in question here. Julius says his father told him at the time where the section line is and that the Hayes owned the property in Section 29 and the Villejoins in Section 28, and that they should never let the Villejoins build a fence between the bayou and the section line.
However, Julius Hayes conceded that the intake canal had been in existence across the 30-foot gap in question for well over 30 years, but he denied that there was any fence across the gap until 1965. It was his testimony that in 1965 Areson Villejoin put some sheep in the Villejoin pasture and at that time Hayes erected a fence just south of the intake ditch in order to keep the sheep from straying onto the Hayes property and other property. Mr. Hayes also contends that they on one occasion sold timber from the 4.93 acres in question. But they admit that Mr. Villejoin also sold timber from this tract without objection from the Hayes Group.
Julius Hayes admitted that for the last 10 years, and particularly after Lovelace Thi-bodeaux leased the pasture, the Hayes cattle had not been on the property in ques *997 tion. The only acts of possession even urged by the Hayes brothers during the last 10 years consisted of hunting on the property, cutting bean poles and walking over it. Mr. Sidney Hayes and Mr. Reginald Hayes testified substantially to the same effect.
Mr. Warren Hayes, who has a camp on the bayou south of the property in dispute, testified he has been very familiar with the area for years. He testified the Villejoins dug the intake ditch for their irrigation pump about 50 years ago. He also remembered that his daddy had built a fence near the ditch to keep the Villejoin sheep in their pasture, and said remnants of that fence are still in existence. One of the most important parts of his testimony is that he had frequently assisted in driving the Ville-join cattle and the Hayes cattle back to their respective pastures when they escaped. This shows the Villejoin pasture was completely enclosed after the intake ditch and fence were built, which was over 30 years ago.
None of the Hayes brothers contend they ever tried to keep Areson Villejoin or his lessee from using the property. They do not even say that they ever told Mr. Areson Villejoin that the Hayes claimed to own the property.
In his reasons for judgment dictated into the record at the conclusion of the trial, the district judge stated the Villejoin heirs did not prove they possessed the land because the Hayes had easy access to the property. He concluded he was “more favorably impressed with the title and possession of the Hayes defendants and will accordingly render judgment in their favor.” We cannot agree that the evidence reasonably supports the finding of the trial judge as to possession. Under the evidence outlined above, it is our opinion the evidence conclusively shows that the Villejoin Group had been in possession of this property both personally, and through their lessee, Lovelace Thibodeaux, for many years prior to the time this concursus was filed.
OWNERSHIP
Having concluded that the Villejoin Group were in possession for more than a year prior to the time this concursus proceeding was filed, the next question under LSA-C.C.P. Article 3654 is whether the Hayes Group, as adverse claimants, “made out” their title to the 4.93 acres in dispute.
The Hayes Group trace their record title back to a tax sale dated June 9, 1906 to James Hayes as purchaser, for taxes due by unknown owners for the year 1905. The property is described as “40 acres of land, more or less, being a portion of Lots 1 and 2, Section 29, TIOS, R2E, bounded north by Bayou Queue De Tortue, south by Indian Bayou, east by E. A. Durham, west by Indian and Bayou Que Tortue.” Subsequent deeds show the Hayes Group presently have a recorded title to the 4.93 acres in dispute. However, the Hayes Group do not allege or seek to prove ownership by the acquisitive prescriptions of either 10 or 30 years.
We are aware of the recent Supreme Court case of Pure Oil Company v. Skinner, La., 294 So.2d 797 (1974), in which the majority held that the burden imposed by the clause “make out his title” under LSA-C. C.P. Article 3654, requires that, as against a party who is in possession, the adverse party must “show title good against the world without regard to the title of the party in possession.” The majority concluded that since there was a gap of 16 years, from 1858 to 1874, in the recorded chain of title, and since there was no attempt to prove acquisitive prescription, the adverse parties had not “made out their title”. Justice Summers, joined by Justice Marcus, wrote a strong dissent contending that the term “make out his title” had been construed by the jurisprudence and by legal scholars to require proof of only “an apparently valid title”, not a perfect title.
In the present case we need not decide whether Pure Oil Company v. Skinner is applicable. Regardless of whether the Hayes Group “made out their title” based on recorded instruments, the Villejoin *998 Group have established their ownership by the acquisitive prescription of 10 years provided by LSA-C.C. Articles 3478 and 3479 which read in pertinent part as follows:
Art. 3478. “He who acquires an immovable in good faith and by just title prescribes for it in ten years . . .”
Art. 3479. “To acquire the ownership of immovables by the species of prescription which forms the subject of the present paragraph, four conditions must concur:
1. Good faith on the part of the possessor.
2. A title which shall be legal, and sufficient to transfer the property.
3. Possession during the time required by law, which possession must be accompanied by the incidents hereafter required.
4. And finally an object which may be acquired by prescription.”
By deed dated July 1, 1944, Mr. Jules Villejoin and his children by his deceased wife conveyed to the defendant, Areson J. Villejoin, property described as follows:
“A certain tract of land situated in the Second Ward of Lafayette Parish, Louisiana, with all improvements thereon containing 35 acres, bounded as follows: North by land of Francois Gaspard; South by E. A. Durr Estate; East by lands of Francois Gaspard and Numa Vil-lejoin; West by Bayou Queue De Tor-tue.”
On the same date, July 1, 1944, Areson Villejoin acquired from his brother, Numa Villejoin, 7 arpents bounded east by the public road and west by the above described land acquired from his father and brothers and sisters, thereby acquiring title to the entire 41 acres which composes the Villejoin farm.
There is no question that on the date he acquired these properties in 1944 Areson J. Villejoin was in good faith in believing that his father and brothers and sisters owned the entire farm including the 4.93 acres in dispute. Not only did Areson Villejoin and his brothers and sisters testify that they thought their father, Mr. Jules Villejoin, owned the entire property, but there were several other witnesses who had lived in the community for many years and who testified that Jules Villejoin had always claimed to own the property in dispute and they thought he did own it. One of the strongest witnesses in this regard is a Mr. Frank Morgan, who is 80 years of age, and was actually called as a witness in this case by the Hayes Group. Mr. Morgan testified that he had always thought the Villejoins owned this property because they possessed it and claimed it. It was not until oil was discovered and a survey was made showing that the 4.93 acres was in Section 29, to which the Hayes claimed recorded title, that anyone questioned ownership by the Villejoin Group.
We think it is also clear that the deed by which Areson J. Villejoin acquired the property from his father and his brothers and sisters in 1944 was sufficient to transfer the property. It is true the description does not state the section or township in which the property is located, but it does give the ward and parish and describes the property by adjacent landowners and by the west boundary, which is Bayou Queue De.Tortue. Under the jurisprudence, this description is clearly sufficient to meet the requirement of Article 3479 that the deed transfer the property. See the similar case of Snelling v. Adair, 196 La. 624, 199 So. 782 (1940). Actually, in their brief filed in this court the Hayes Group do not even argue that the 1944 deed to Areson J. Villejoin was not sufficient to transfer the property. Their arguments are directed chiefly to the contentions that the Villejoins had no possession and that the Hayes have record title.
Requirements numbered 3 and 4 under Article 3479 quoted above are also met. For the reasons stated in the above discussion regarding the possession of Areson Vil-lejoin, it is clear that the 4.93 acres in dispute was completely enclosed with the remainder of the Villejoin farm and was corporeally possessed by Areson Villejoin in good faith for much more than 10 years after he acquired the property in 1944.
*999 We conclude that the Villejoin Group not only possess the property in dispute but that they own it by the acquisitive prescription of 10 years.
For the reasons assigned, the judgment appealed is reversed and set aside. It is now ordered, adjudged and decreed that there be judgment herein against Reginald Hayes, Sidney Hayes, Julius Hayes and Warren C. Hayes, and in favor of Areson J. Villejoin, Katherine Villejoin Picard, Iris Villejoin Simoneaux, Brendon Lenora Ville-join Fontenot and Ozaun K. Villejoin recognizing them as owners of the 4.93 acres in dispute as described in plaintiff’s petition and in this concursus proceeding, and in the proportions and capacities stated in paragraph 4 of said petition. It is further ordered, adjudged and decreed that the clerk of court for Lafayette Parish, and the plaintiff, McCullouch Oil Corporation, pay over to the named members of the Villejoin Group all of the royalties accruing to said property in the proportions stated in paragraph 4 of plaintiff’s petition and this con-cursus proceeding. All costs of both the trial and appellate courts are to be paid from the mass of the sum on deposit with the clerk of court.
REVERSED AND RENDERED.