FOURNET, Justice.
 

 This is a suit for the recovery of the amount of the consideration of an- oil and gas lease instituted by the lessors against their grantee and the escrow agent with whom the lease and the consideration therefor had been placed under an agreement of the parties pending the examination and acceptance of title to the property described in the lease, but which was allegedly recorded by the escrow agent in violation of the agreement and in which • act the grantee acquiesced.
 

 The case was submitted to the trial judge on an agreed statement of facts- wherein it was stipulated that the admitted facts of the petition and the documents attached thereto and the relevant facts averred in the answer should be taken as true and considered with a letter dated June 15, 1936, addressed to defendant, William C. Feazel, by plaintiffs’ counsel. The case was also submitted on plaintiffs’ plea of estoppel.
 

 There was judgment in the lower court for the defendant, rejecting plaintiffs’ demands, and they have appealed.
 

 The facts of the case as disclosed by the record are substantially, as stated by the trial judge in his written reasons for judgment, as follows:
 

 “On May 20, 1936, Frank A. Blanchard, attorney for some of the plaintiffs, opened the succession of Sidney Primus, and appointed tutors for some of these plaintiffs; and that the plaintiffs, together with Welvin Primus, at the same time and place, executed an oil and gas lease in favor of W.- C. Feazel for a stipulated consideration of $8,000.00. Plaintiffs were represented in the sale by one Robert Edward Robinson and he and 'W. C. Feazel entered into the escrow agreement above referred to, which in part provided that an abstract of title was to be furnished to H. B. Warren who was to examine same promptly and if he approved the title he was authorized to deliver the lease to Feazel and the cashier’s check to ‘first party’. The First Party stipulated in the escrow agreement being the Agent Robinson. The agreement further provided that if the title was found to be defective then party of the first part would have ten days within which to cure the defects, and if cured within said delay, then said attorney was authorized to accept the lease and deliver the check as aforesaid: (This delay would have expired June 5, 1936). That if the title was not cured within the delay, then second party at his option may have ten days within which to cure the title.
 

 “The abstracts were promptly delivered and the written opinion rendered thereon to
 
 *935
 
 the signees of the escrow agreement as stipulated, on May 25, 1936. The title was found to have many defects therein, some of which have been cured and others not cured. There is no suggestion or pleading to the effect that the title has ever been cured. That after defendant Warren rendered the opinion on the title, Frank A. Blanchard, who is alleged to have been the attorney for plaintiffs (Answer, Par. 19) obtáined a copy thereof and agreed to employ a surveyor to locate the boundaries to establish possession; that on May 27, 1935, Attorney Blanchard advised Mr. Warren that the plaintiffs (colored people) were being accosted on all sides and he feared that some of them through ignorance or otherwise, might make some transaction that would affect the title and that the léase should be recorded, whereupon defendant Warren delivered the lease to Blanchard to be recorded and the abstract brought down to date. The escrow agreement had been recorded the day previous, May 26, 1936. The supplemental abstract was furnished, dated May 27, 1936, at 2:20 P. M., which disclosed that a number of the plaintiffs had already sold and recorded their interest in the oil and gas to Welvin Primus; that on May 28, 1936, the plaintiffs had prepared and filed for record an affidavit signed by them declaring that the lease of Feazel was without consideration; that it had been illegally and fraudulently obtained from plaintiffs and placed of record, and therein gave notice of their intention to file suit for the cancellation of the instrument. Upon discovery of this, affidavit, Warren considered this a repudiation of the lease and the transaction definitely at an end and notified Feazel, Blanchard, agent Robinson and others who owned a part of the minerals and were agreeable to ratifying the lease. The .following day, May 29, Mr. Hoy Grafton, an attorney, representing plaintiffs asked Mr. Warren, if he would reconsider the matter, and Warren advised that he would communicate with defendant Feazel, who resides in Monroe. Before contacting Feazel, Ed Green called on Warren and asked if he would reconsider the matter, and was advised that if Mr. Feazel was willing he would deal with the negroes in person only and then they must come to his office and sign all documents necessary to clear the title in his presence. Plaintiffs never came.
 

 “It appears that on June 1, 1936, defendant Feazel came to Shreveport and Warren returned to him the cashier’s check, at the same time having him execute a release of the oil and gas lease from plaintiffs to. Feazel, which had been recorded, which release Warren kept because no one called for it.
 

 “At the time of the execution of the lease under discussion a well in search of oil or gas was being drilled on adjoining lands by the Pyramid Oil & Gas Co., which well was completed on' May 29, 1936, but it failed to produce either oil or gas, but did produce salt water. Thereafter, plaintiff alleges that they could not sell a lease on the land to any one for any price.
 

 “On June 15, 1936, the present counsel for plaintiffs wrote a letter to Mr. Feazel
 
 *937
 
 and after reciting the execution of the lease aforesaid stated that according to the facts given them that no part of the consideration had been paid, and then said:
 

 “ ‘We will appreciate it if you will communicate with us immediately in this connection, advising us whether or not you are willing to pay the amount due.’
 

 “A few days afterwards, Feazel gave the letter to Mr. Warren and Mr. Warren telephoned counsel who had written the letter that Mr. Feazel would not pay the consideration and explained the facts in the case and advised them that they could have access to his file and the opinion on the title, but they did not call fo,r same. On June 30, counsel for plaintiff telephoned Warren that he had an assignment from Welvin Primus and an authorization for the tutrix of the Primus minors to execute a lease which he would deliver on payment of $8,000.00 and asked if Warren would waive tender, which Warren did waive. On July 1, Warren sent to Feazel another release of the oil and gas lease, which he considered more adaptable to the facts in the case. On July 2nd Warren was served with this suit. On July 2nd Feazel executed this second release and returned it to' Warren who recorded it on July 3, 1936.”
 

 “Generally speaking an escrow delivered by the depositary before compliance with or contrary to the conditions 'on which it is to be delivered, is inoperative. No title passes to the grantee * * R.C.L., vol. 10, § 16, p. 634. And “as the depositary is bound by the terms of the deposit and charged with the duties voluntarily assumed by him, the rule is that liability attaches to him if he improperly parts with his deposit.” Sec. 18, p. 636, R.C.L., same volume. See, also, 48 A.L.R. 405, et seq.
 

 In the instant case the escrow agreement was recorded prior to the recordation of the lease. It is admitted by counsel for plaintiffs that this was notice to third parties of the existence of the rights of the parties under the agreement and that a lease taken by third parties thereafter would be subject thereto. The effect of the recordation of the agreement, under the terms thereof, had the effect of binding the parties thereto until June 1, 1936 — the very day on which the escrow agent Warren returned the $8,000 to Feazel and secured from him a release of the lease. At that time and thereafter, according to plaintiffs’ own allegations, a lease on the property could not have been sold for any consideration whatever. It, therefore, follows that the 'mere recordation of the lease, contrary to the stipulations in the escrow agreement, could not have injured the plaintiffs in any manner. Moreover, the plaintiffs, in a supplemental brief, have abandoned their claim for damages and restricted their claim to the consideration of the lease.
 

 It is argued by counsel for plaintiffs, both in brief and orally, that while it is true that the wrongful recordation of an instrument placed in escrow does not have the effect ipso facto of conveying the property to the grantee, nevertheless such an act does constitute a legal fraud on the rights
 
 *939
 
 of the party wronged, and such party has the option either to ratify or repudiate the wrongful act. He further contends that plaintiffs, when they filed this suit, ratified the act and are entitled to the consideration therein recited, and that any defect in the title is no defense because Feazel had the right to waive the same.
 

 The fallacy of counsel’s argument lies in the fact that the lessors (plaintiffs here) immediately following the ‘recordation of the lease, in violation of the escrow agreement, filed of record their affidavit declaring that the lease to Feazel was without consideration; that it had been illegally and fraudulently obtained from them; and that they intended to file suit for the cancellation thereof. They thereby formally repudiated the lease. The matter was so considered by all parties concerned, because Warren surrendered the $8,000 check to Feazel and he executed a release of his rights to the lease. That such was plaintiffs’ own interpretation of the situation is shown by the fact that Hoy Grafton, an attorney representing the plaintiffs, a few days later asked Warren to reconsider the matter. A similar request was subsequently made on behalf of plaintiffs by Ed Green. Therefore, although the release executed by Feazel was recorded 33 days after its execution and only the day after the suit was filed, in the absence of any actual damages suffered by plaintiffs, is of no consequence.
 

 For the reasons assigned, the judgment of the lower court is affirmed; appellants to pay all costs.