**CLARK v. BUSH et al.**

**No. 5752.**

Court of Appeal of Louisiana.
Second Circuit.

Nov. 4, 1938.

John B. Files and J. T. Carpenter, both of Shreveport, for appellants.

D. H. Perkins, W. M. Phillips, and Blanchard, Goldstein, Walker & O'Quin, all of Shreveport, for appellee.

TALIAFERRO, Judge.

Defendants, Bryan E. Bush and J. Norman Coon, on October 15, 1936, executed to J. Edward Jones Petroleum Corporation a mineral lease to two lots in the Townsite of Rodessa, Caddo Parish, Louisiana. Contemporaneous with the execution of the lease contract an escrow agreement was also signed by the parties, some of the conditions of which held in suspense the effectiveness of the lease contract until the requirements of such conditions were met. To guarantee drilling operations within the stipulated time (45 days), the lessee advanced the sum of one thousand dollars. This money, the lease contract, or a duplicate original thereof, and escrow agreement were all deposited with the First National Bank of the City of Shreveport as escrow agent. The escrow agreement (subsections (a), (b) and (c) provides a term in which the lessors shall furnish a complete abstract of title of the leased lots to the attorney of the lessee, and the time

within which he should examine the abstract and pass on the title. A term is also fixed for the curing of defects in the title by the lessors, if any, found by said attorney, as well as a term in which lessee may do such curative work on lessors' default. The opinion of lessee's attorney on the title and his objection thereto were required to be in writing. One copy of his final approving opinion was to be delivered to defendant Bush and one copy to the escrow agent. The escrow agreement also contains this overriding stipulation, to-wit: "(f) The provisions of Section (a), (b) and (c) hereof are subject to the additional condition that prior to approval of title and delivery of said lease to lessee, lessor shall furnish lessee with a valid permit from the Department of Conservation of the State of Louisiana for the drilling of a well on the above described property and said bank shall in no event deliver said lease to lessee until advised by W. M. Phillips, lessee's attorney that said permit has been secured and delivered to him or to lessee."

The permit to drill the well could not be procured from the Department of Conservation, notwithstanding considerable effort.

J. Edward Jones Petroleum Corporation assigned all of its rights under the escrow agreement to the J. C. Petroleum Corporation and that corporation assigned its rights thereunder unto plaintiff. He instituted the present suit against Bush, Coon and the bank to recover the one thousand dollars deposited to guarantee the drilling of a well and to cancel the escrow agreement. The right to recover this amount is based upon the theory that the agreement never became effective on account of the failure of the lessors to procure issuance of the permit, they were obligated to do,—it being legally impossible to drill the well without such permit.

The bank deposited in the court's registry the One Thousand Dollars held by it and thereafter ceased to be identified with the case.

Defendants deny the right of plaintiff to recover the fund involved, but on the contrary assert that same has been forfeited to them under the terms of the escrow agreement, because no well was drilled within the term stipulated, and pray for judgment in their favor accordingly. While admitting they were originally obligated to procure issuance of the permit to drill the well under the escrow agreement, they aver that that stipulation never became effective and that it was "agreed and understood by and between them and the lessee that they would be relieved of any obligation to furnish the drilling permit", at the time the deposit was made with the escrow agent; that pursuant to that agreement the attorney of lessee approved the title to the property without requiring them to furnish the drilling permit; that further, in pursuance of said agreement, and the approval of the title by said attorney, the lessee did, on October 15, 1936, sign an application for a permit to drill the well on said property, and forwarded same with check of $50 to the Conservation Commission of Louisiana, as by law required as a condition precedent to issuance of authority to drill an oil or gas well; that no demand was ever made upon them to procure the permit, and offers by them to assist lessee in its efforts to do so were declined, lessee thereby assuming all responsibility in that connection.

There was judgment for plaintiff as by him prayed for, and defendants have appealed.

The lower court properly excluded all parol testimony offered by defendants to contradict the provision in the escrow agreement to the effect that lessors assumed the obligation to procure a permit to drill on the leased lots. They here contend that because the lessee endeavored to have the permit issued by making application therefor and advancing the fee of $50, required by law (Act No. 131 of 1934), that the right to enforce this provision of the agreement against them was thereby waived. Written application for the permit was made out the day the lease was signed, at the suggestion of lessee's counsel, and the $50 afterwards forwarded to the Department of Conservation by the lessee. Both were returned to Mr. Bush in January, 1937, when issuance of permit was refused. In the meantime both sides were exhausting all amicable efforts to induce the department to grant the permit. Both sides had a mutual interest in doing so.

On January 11, Mr. Bush, in a letter to lessee's president, after stating the willingness of himself and Mr. Coon to join in any action to force issuance of the drilling permit deemed advisable by the lessee, said, "or we will take the initiative and cause the courts to order the commission to issue the permit". He was advised a few days there-

after that the lessee would not initiate the court proceedings referred to, but the propriety of lessors doing so was suggested, and on January 18, Mr. Bush wrote lessee's president advising that he had decided to provoke the discussed judicial action, and inter alia said: "I will be delayed a few days in filing this suit, for the reason that I do not feel like bearing all expenses in connection with the proceedings, and I have called upon some associates for co-operation. I will have to be party plaintiff, and therefore can not represent myself, and have made arrangements with Mr. John B. Files to appear as attorney of record. I will keep you advised at all times as to developments."

This was long after the 45-day period in which to begin drilling had expired. Both sides were yet willing to live up to their agreements if the permit could be had. No suit was filed to force the Commission to issue the permit.

On May 24th, lessee, through counsel, advised defendants and the bank that it elected to proceed no further with the agreement and made formal demand for the return of the $1,000. The present suit was not filed until the following November.

The letters of Mr. Bush, referred to above, clearly reflect the feeling on his part and that of Mr. Coon that they were under an obligation to provide the way whereby drilling on their property might legally be commenced. In none of the correspondence referred to is it intimated that this obligation devolved upon or had been assumed by lessee; and it is as clearly reflected from said correspondence that lessee had not assumed the duty to procure the permit, nor intended to release the lessors from so doing. The fact that lessee applied for the permit and advanced the fee therefor, in the light of the contract, surrounding circumstances and subsequent developments, does not warrant the inference that the terms of the escrow agreement, in the respect discussed, were to be modified so as to relieve lessors of their obligation thereunder.

It is obvious that the effectiveness of the lease contract involved depended, in the final analysis, upon the obtention of a permit from the Department of Conservation to drill the well contemplated by the parties thereto. No well could be drilled without such authority and both sides well knew this. Through no fault of lessee the permit was not procured. Therefore, the beginning of a well within the 45-day period, or before lessee refused to proceed further under the agreement, is not attributable to it to any extent. This being true, the money advanced to guarantee performance of the lease contract on its part has not been forfeited. It belongs to the plaintiff who now stands in lessee's shoes.

The judgment appealed from is correct and it is affirmed with costs.