This is a suit in which plaintiff seeks to recover the sum of $1,400 representing damages alleged to have been suffered by reason of breach of contract on the part of defendants, S. J. Bearden and his daughter, Morean Bearden Russell. Plaintiff appeals from judgment of the district court in favor of defendants.
The pertinent facts in connection with the subject matter of the litigation are as follows:
On September 5, 1946, Morean Bearden, who was at the time unmarried and has since been married to Sam C. Russell, executed an oil, gas and mineral lease covering a tract of land of some 140 acres located in Union Parish, Louisiana, to and in favor of Armour K. Kilpatrick, plaintiff herein. The negotiations prior to the execution of the lease appear to have been conducted by one W. B. Taylor, acting as agent for plaintiff, and S. J. Bearden, father of Morean Bearden Russell, as agent for his said daughter. The lease, to which was attached a draft on plaintiff, was deposited in the Farmerville Bank, Farmerville, Louisiana. The consideration recited in the lease, and reflected by the amount of the draft, was the sum of $2,800, and there was noted upon the face of the draft the words "upon approval of title." On or about September 20th, plaintiff's attorneys, Messrs. Shotwell and Brown, rendered an opinion based upon a chain of title which disclosed an outstanding one-half interest in the minerals in and under the tract described to be vested in Armand F. Rabun. On September 20, 1946, the defendant, Morean Bearden Russell, executed a deed of conveyance covering the property involved to and in favor of her father, S. J. Bearden. There is considerable testimony in the record with respect to the transfer of the property from Bearden to his daughter and the retransfer which would indicate that the transactions were simulated, but we find it unnecessary to rule on this point. By instrument dated October 10, 1946, S. J. Bearden, executed an oil, gas and mineral lease on the property described to and in favor of the Sun Oil Company, for a recited consideration of $4,000. By instrument dated October 11, 1946, Armand F. Rabun ratified and confirmed the said lease. By letter dated October 16, 1946, addressed to Mr. and Mrs. Sam C. Russell, the plaintiff, Kilpatrick, communicated a purported acceptance of the lease agreement of September 5th, the body of which letter we quote in full, as follows:
"Title to the above captioned property has been approved in you to my satisfaction as of September 5, 1946. I am, therefore, ready and willing to go through with our agreement of that date with reference to the acceptance of the lease agreement entered into between us.
"It has come to my attention, however, that subsequent to our agreement, you have *Page 619 
transferred subject property to a third party, who, has in turn, encumbered same with a lease, thereby making our agreement insusceptible of performance on your part.
"This is to request that you either reacquire subject property and cancel the lease placed thereon by your vendee and go through with our agreement, or reimburse me in damages for your breach thereof in the amount of $1,400.00, which sum represents the amount of profit I can presently realize on said lease if you comply with your obligations per our agreement. You are also called upon, in the event you refuse to comply with our agreement, to reimburse me for expenses incurred for abstract and title examination of subject property."
Plaintiff's action was based primarily upon the contention that he had a bona fide offer of $30 per acre on the leased property which would have netted him a profit of $1,400, the amount which he seeks to recover in this suit. Evidence of the purported offer, in addition to certain oral testimony by witnesses on trial of the case, is found in a letter of date September 14, 1946, written to plaintiff by one C. E. Petty, which letter reads as follows:
"Dear Mr. Kilpatrick:
"I was discussing with you this morning a certain lease described as follows:
"S 1/2 of NW 1/4, and the NE 1/4 of NW 1/4, and W 1/2 of NW 1/4 of NE 1/4, Section 3, Township 19, Range 1 East, Union Parish, containing 140 acres more or less.
"You were buying the above described lease from Mrs. Sam Russell. On the Ownership Map that I was shown by you, it shows in the name of S. J. Bearden, father of Mrs. Russell.
"This is to confirm my offer to you of $30.00 per acre for this lease to be paid immediately upon opinion of title rendered by Shotwell and Brown, Attorneys, Monroe, La.
"Please execute and deliver this as soon as possible, and furnish me a possession affidavit.
"Respectfully submitted,
"C. E. Petty "C. E. Petty"
Plaintiff predicates his claim primarily upon the contention that the defendant, Morean Bearden Russell, breached her contractual obligations by transferring the property covered by the lease to the defendant, S. J. Bearden, and, on the basis of these facts and conclusions deduced therefrom, plaintiff claims that his damages have been the result of a conspiracy between the two defendants, for which they are solidarily liable; alternatively, that the defendant, Morean Bearden Russell, is personally liable for breach of contract evidenced by her transfer of the property subject to the lease thereby rendering the lease contract insusceptible of performance on her part; again, alternatively, plaintiff asserted his claim against defendant, S. J. Bearden, on the ground that the damages resulted from said Bearden's lack of authority as agent, or from the fact that he exceeded his powers as agent.
There is a vast amount of testimony in the record with respect to oral agreements and understandings between the parties, and their respective interpretations thereof, much of which is disputed and conflicting. We deem it unnecessary to indulge in any lengthy discussion of these phases of the matter by reason of the fact that, in our opinion, it may be adjudicated on the basis of one fact which appears to us to have been conclusively established.
The chain of title procured by Taylor as plaintiff's agent and submitted to Shotwell and Brown, attorneys, disclosed that the defendant, Morean Bearden, joined by her father, the defendant S. J. Bearden, by instrument dated March 17, 1938, sold and conveyed to Armand F. Rabun an undivided one-half interest in and to all the oil, gas and other minerals on and under the tract of land involved in this suit, and that the said Rabun was the record owner of the minerals described on September 5, 1946, the date of the purported lease to plaintiff. It is clear that the payment of the consideration agreed upon between the parties, namely, $2,800, was subject to approval of title, and it is also clearly established, by reason of the facts above set out, that the title was not approved. Reference to the offer made by Petty to plaintiff, which is the basis of plaintiff's *Page 620 
claim for damages, further shows that said offer was contingent upon approval of title by the same attorneys, Messrs. Shotwell and Brown. The record is devoid of any evidence whatsoever to the effect that title was approved by Messrs. Shotwell and Brown, and it is noted that plaintiff's purported acceptance on date of October 16, 1946, which was almost four weeks after the conveyance from Mrs. Morean Bearden Russell to S. J. Bearden and some six days after the execution of the lease from Bearden to the Sun Oil Company, contains the somewhat cryptic statement:
"Title to the above captioned property has been approved in you to my satisfaction as of September 5, 1946."
The above statement is absolutely unsubstantiated by any other evidence or testimony in the record. There was no change in the status of title between September 5th, the date of the lease to plaintiff, and his alleged acceptance on date of October 16th. If the title was satisfactory to plaintiff on October 16th, retroactively to September 5th, there is no explanation as to why he had not communicated his acceptance long prior to October 16th, which fact appears to be materially relevant in view of the offer for the purchase of the lease at a profit to plaintiff made by Mr. Petty on September 14th. Nor did plaintiff introduce any testimony which would justify the conclusion that the title, which he claimed was satisfactory to him, was satisfactory to his proposed assignee. Upon this fact would depend plaintiff's right and claim to damages, and, only by an affirmative showing, could he sustain such claim.
Our learned brother of the district court was obviously influenced by this same consideration and, in a most commendable spirit of fairness, he incorporated in his written opinion the following statement:
"If I am in error in reaching the conclusion that Messrs. Shotwell and Brown, plaintiff's attorneys, never approved the title to the leased property, upon plaintiff's attorney calling the Court's attention to that fact I will grant a rehearing in the case and permit his counsel to file said attorney's opinion in the record and will then give the case further study in the light of the information contained in said opinion."
The record does not reflect any effort on the part of plaintiff or his counsel to take advantage of the offer made by the trial judge, and we can only conclude that, for obvious reasons, the information was not available.
In our opinion the agreement between plaintiff and defendants was clearly conditional. It is urged on behalf of plaintiff that he was entitled to a reasonable time for the clearing of the objections to the title. Without venturing any conclusion as to the merit of this argument, we are constrained to hold, under the facts of the instant case, that plaintiff has utterly failed to show by any degree approaching a preponderance of the evidence, any effort either to clear the title himself or to have it cleared by defendants. It would appear that if the matter was of the importance and value claimed, plaintiff would have exercised himself more vigorously and promptly in bringing it to a conclusion. His failure to do so must be construed against his contentions. This, coupled with the fact that his only definite manifestation of an intention to accept was made known only after the passage of an appreciable period of time subsequent to the conveyance and lease of the property to other parties, leads to the inescapable conclusion that plaintiff, by his own actions, forfeited any rights which he might have timely asserted.
Despite the difference on the point of an agreement as to a definite time, the facts of the case before us are decidedly analogous to those involved in Flournoy v. Miller,114 La. 1028, 38 So. 818, 819. We believe that the pronouncements in the cited case are appropriate to a determination of the issue herein, particularly the principle which was stated by the court as follows:
"The contract was not a promise to sell or a promise to buy, pure and simple. One party offered to sell provided the title was approved as before mentioned; the other promised to buy on the same condition. The latter could not insist upon the sale, *Page 621 
for the attorneys did not succeed in finding a clear title within time stipulated."
For the reasons assigned, the judgment appealed from is affirmed at appellant's cost.