CULPEPPER, Judge
(dissenting).
I respectfully dissent, being of the opinion the trial judge was correct in holding that this case is controlled by Wampler v. Wampler, 239 La. 315, 118 So.2d 423 (La.Sup.Ct.1960).
As I understand the majority opinion, it holds that in the instant case there was no escrow agreement contracted on a sus-pensive condition, but instead that the overriding royalty assignment from Marks to Lewis took effect and passed title immediately on its execution, subject to the resolutory condition that if Marks had not received merchantable title to at least 75% of the working interest, then the assignment would be revoked. LSA-C.C. Articles 2021-2045. I cannot agree with this conclusion. Under the holding in the Wampler case, I think it is inescapable that the verbal agreement entered into when the overriding royalty assignment was left with Marks’s attorney, Mr. Maxwell, was an escrow agreement contracted on a suspensive condition. Title *802 to this overriding royalty did not pass to Lewis until after the happening of these suspensive conditions.
Briefly stated, the facts of Wampler v. Wampler, supra, are that on July 18, 1952, during the marriage between Mr. and Mrs. Wampler, he entered into an escrow agreement with a Mr. Corley regarding the purchase of an oil lease. An escrow agreement was used because the lease had been signed by only eight of the eighteen landowners and the title had not been checked and approved by an attorney. Mr. Corley executed the assignment to Wampler, and it was placed in escrow with Mr. Wampler’s attorney under the verbal agreement that when the lease had been signed by all of the eighteen landowners and the title had been examined and approved by the attorney, the assignment would be delivered to Mr. Wampler and Mr. Corley would be paid the sum of $1,000. By July 23, 1952 all of the landowners had signed the lease but the title had not yet been checked and approved. On August 15, 1952 the divorce between Mr. and Mrs. Wampler became final. On September 23, 1952 the attorney finally completed his title examination and curative work and approved the title. He then delivered the lease assignment to Mr. Wampler and the $1,000 was paid to Mr. Corley. In a unanimous decision the Supreme Court held as follows:
“All obligations contracted on suspen-sive conditions are not escrow agreements, but all escrow agreements are obligations contracted on suspensive conditions so that, as applied here, the terms are interchangeable. An escrow is defined in 30 C.J.S. Escrows § 1, as a deed or other instrument deposited with a third person to be held for delivery to the grantee on the performance of a condition or the happening of a certain event. Escrows are fully recognized in Louisiana (see Bremer v. Lane, 185 La. 543, 169 So. 568; Primus v. Feazel, 189 La. 932, 181 So. 449; Clark v. Bush, La.App., 184 So. 588 and Kilpatrick v. Bearden, La.App., 37 So.2d 618), and such agreements, if oral, may be proven by parol evidence. Viso v. Gullo, 179 La. 8, 153 So. 3 and Robinson v. Marks, 211 La. 452, 30 So.2d 200.
“This is exactly the nature of the agreement in the instant case. It is shown that the assignment in question was left with Mr. David who was given verbal instructions to held it until the lease which it assigned had been fully executed and until the titles of all lessors had been examined and approved by him. These conditions suspended the obligation of the assignment, which was not binding or enforceable against either party until the conditions were fulfilled, it being well settled that an instrument in escrow does not become operative until performance of the conditions or the happening of the contingency agreed upon. 30 C.J.S. Escrows § 10 (a) and 19 Am.Jur. ‘Escrows’, Sections 20, 25.
“The provisions of our Civil Code and the jurisprudence interpreting them are in accord with the principles stated above. Article 2043 declares:
“ ‘The obligation contracted on a sus-pensive condition, is that which depends, either on a future and uncertain event, or on an event which has actually taken place, without its being yet known to the parties.
“ ‘In the former case, the obligation can not be executed till after the event; in the latter, the obligation has its effect from the day on which it was contracted, but it can not be enforced until the event be known.’ (Emphasis ours.)”
The majority opinion states that the instant case is distinguishable from Wampler v. Wampler, supra, because: “In the Wamp-ler case, supra, neither party had performed the obligations assumed by him in oral agreement by the time the divorce was granted. Corley had not delivered a merchantable title to the leases and Wampler had not paid the consideration which he had *803 agreed to pay. The contract, therefore, had not been completed and Wampler was not entitled to the assignment of the overriding royalty interest at the time the divorce was granted. In the instant suit, however, both parties to the oral agreement had completed all of the obligations which they had agreed to perform. Lewis had obtained and had delivered to Marks all of the leases which he had agreed to obtain, and Marks in turn had executed the assignment of an overriding interest in favor of Lewis, which constituted the consideration he had agreed to pay Lewis for these leases. Neither party was obligated to do anything further, and the only reason why the overriding royalty assignment was not delivered to Lewis on October 26, 1959 (which was before the divorce was granted), was simply to give Marks time within which to have the titles examined and to determine whether he actually had obtained a 75 per cent working interest in such leases, pursuant to the agreement. Although the record shows that some curative title work was done after the assignment was executed by Marks, and even after the separation decree between Lewis and his wife had been rendered, there is nothing in the record which indicates, or even casts a suspicion, that Lewis' had not delivered a 75 per cent working interest in the leases to Marks on or prior to October 26, 1959.”
As I understand the basic reasoning of the majority opinion, it is that the Wamp-ler case is distinguishable because here Lewis actually did all that he agreed to do, i. e., obtained the leases, and Marks actually executed to Lewis the assignment of overriding royalty, before the divorce between Mr. and Mrs. Lewis. The majority reasons that the royalty assignment was therefore effective and passed title on the date it was executed. The majority reasons further that the conditions that the title had to be checked by an attorney, curative work done and the title approved, are resolutory rather than suspensive conditions.
This reasoning ignores the undisputed facts of this case. The escrow agreement was proved by the uncontradicted testimony of four witnesses. Mr. Marks, Mr. Lewis, Mr. Benson, who was Marks’s geologist and partner, and Mr. Maxwell, attorney for Marks, all testified that the assignment of overriding royalty was left with Mr. Maxwell under the verbal escrow agreement that when the title had been examined by an attorney and this attorney approved merchantable title in Marks to 75% of the working interest in the leases, the overriding royalty assignment would be delivered by Maxwell to Lewis. The majority opinion makes much of the fact that Mr. Benson and Mr. Lewis testified Lewis personally was not required to do any curative work, but, as I see it, this is immaterial. Whether Lewis did the curative work or someone else did. it,,it was still clearly understood as part of the escrow agreement that merchantable title in Mr. Marks had to be approved before the overriding royalty assignment was delivered to Mr. Lewis. Actually, the record shows that Mr. Lewis did do curative work, some before and some after the divorce, including the obtaining of a correction to one of the leases, a court order authorizing signatures by representatives of an estate, the ratification of certain leases, affidavits of death and heirship, affidavits of marital status and other required corrective data. This curative work, whether done by Lewis or. someone else, had to be performed before the title could be approved as merchantable.
. As in the Wampler case, it is clear in the present matter that the parties contemplated a withholding of title until the suspensive conditions were performed. There is not one shred of evidence in this record to support the majority conclusion that the parties intended the title to this overriding royalty to pass to Mr. Lewis on the date the assignment was executed. If that had been the intention, then obviously the ássignment would have been delivered to Mr. Lewis on the date it was signed. But, it was not delivered to Mr. Lewis. It was placed in escrow with Mr. Marks’s attorney under the suspensive conditions above discussed.
*804 For the reasons assigned, I respectfully dissent.