**HAMILTON v. ROGERS et al.**

Civ. No. 9538.

United States District Court, E. D. Michigan, S. D.

June 5, 1951.

---

1. Southern Pacific Co. v. Jensen, 1916, 244 U.S. 205, 37 S.Ct. 524, 61 L.Ed. 1086; see Robinson on Admiralty, pp. 101–109.

William Henry Gallagher, Detroit, Mich., for plaintiff.

Benjamin Gold, Niagara Falls, N. Y., for defendants.

THORNTON, District Judge.

An action was commenced in this Court by plaintiff, as patentee, against the co-partnership defendant, as licensee, to terminate a limited license existing between these parties. By virtue of said license the patentee, on November 7, 1949, granted to licensee a limited license to manufacture and sell 100 gross of "Zoomerangs" per month, this allotment being a part of the quantity reserved by the patentee by virtue of a previous license agreement, the plaintiff being the owner of a patent issued on January 31, 1950, bearing U. S. Patent Office No. 2,495,967 covering a toy commercially known and sold under the trademark "Zoomerang", the said toy being the subject matter of the aforementioned limited license. A hearing was had on the proceeding to terminate the limited license between the parties. After this Court made a partial finding of fact and entered a preliminary injunction on some of the issues present in the controversy, the parties, desirous of avoiding further litigation and amicably adjusting their differences, entered into an agreement on August 4, 1950, which grew into a stipulation that brought about the entry of a judgment by this Court on the 8th day of August, 1950, the pertinent portions of which are hereinafter set forth:

"It is Hereby Ordered, Adjudged and Decreed that the plaintiff shall cancel and forego all royalties which have been, are or may be due to him from the defendants."

"It is Further Ordered, Adjudged and Decreed that the defendants may continue to manufacture, sell and distribute the toy bearing the name and trademark of 'Zoomerang' which is the subject matter of U. S. Patent No. 2,495,967, up to midnight of November 30, 1950."

"It Is Further Ordered, Adjudged and Decreed that the defendants may manufacture, distribute and sell during the four month period from July 16, 1950 up to midnight November 30, 1950, a quantity of Zoomerangs in the amount of 600 gross, but not in excess of that amount, and the said defendants are hereby enjoined from manufacturing, selling or distributing more than 600 gross Zoomerangs during the said four months period."

"It Is Further Ordered, Adjudged and Decreed that the defendants shall cease all manufacture, sale and distribution of the said Zoomerangs after midnight of November 30, 1950, and the said defendants

are hereby enjoined from manufacturing, selling or distributing the said Zoomerangs from and after midnight of November 30, 1950."

"It Is Further Ordered, Adjudged and Decreed that the defendants shall deliver a release and cancellation to the plaintiff of their limited license to manufacture, sell and distribute the said Zoomerang, immediately after November 30, 1950."

On the 14th day of August, 1950, the plaintiff filed a petition to punish the defendants for contempt of court for failing to comply with the terms of the judgment entered in this cause on August 8, 1950, and further requested that the defendants be specifically enjoined from using any other name than the name of "Zoomerang" on toys manufactured by them which were covered by U. S. Patent No. 2,495,967 issued to the within plaintiff; the plaintiff further alleged in his petition that he entered in good faith into the agreement upon which the judgment was grounded, after lengthy negotiations with the defendants, and based upon their representation that they were going out of the business of manufacturing the toy which is the subject of the within lawsuit; and that the defendant Richard Rogers, or his agent, repeatedly stated that his brothers were going into military service and that he would like to sell out his stock on hand and on order, and that he would then cease all manufacture in any manner, shape or form of the toy known as "Zoomerang"; the petitioner further alleged that the defendants have deluged the toy trade in the United States with advertising matter which evidences the fact that the defendants are manufacturing a toy known as "Zoomerang" under a new name known as "Zim-Zoom", (the said advertising matter having been produced at the hearing) and that a comparison of this advertising material relating to "Zim-Zoom" with defendants' previous advertising of the toy "Zoomerang" demonstrates that the said defendants simply changed the name of the product being manufactured by them; the plaintiff further alleged, on information and belief, that the defendants deliberately planned to sell an unlimited number of "Zim-Zooms"

regardless of the limits contained in the aforesaid agreement and judgment of the Court, as evidenced by certain statements and claims made by them, all to the irreparable damage of the plaintiff.

The agreement of August 4, 1950, contains the following concession: "the Patentee is the owner of a patent issued on January 31, 1950, bearing U. S. Patent Office No. 2,495,967, and said patent covers a toy commercially known and sold under the trademark 'Zoomerang',"

This agreement further provided that the limited license to the individual defendants would be cancelled on November 30, 1950; that until that date the defendants could manufacture and sell a larger number of "Zoomerangs" than the Court's preliminary injunction would have permitted, and that the said individual defendants would not in any manner, shape or form engage in the manufacture, distribution or sale of said "Zoomerangs" after midnight of November 30, 1950.

J. Rogers & Bros. Mfg. Co., Inc., a New York corporation, was formed on June 6, 1950, for the purpose of manufacturing and selling "Zim-Zooms" and its tangible assets consisted of an assignment from the defendant Richard Rogers of "Zim-Zooms" and a bill of sale to the assets of the defendant copartnership. No moneys were paid for stock in this corporation until October 4, 1950, which was after the corporation was made a defendant in this proceeding; the defendant Charles Rogers was vice president of this corporation during the entire course of the within proceeding; the corporation and some of its officers, its agents and its attorney had knowledge of the orders and judgment entered in this proceeding; the only purpose of this corporation was to manufacture and sell "Zim-Zooms"; the individual defendants and/or the defendant copartnership arranged and paid for advertising space at a Chicago trade fair to sell "Zim-Zooms"; they purchased stamps for the corporation bearing the corporation name; they bought a check book from a Detroit bank bearing the corporation name; they manufactured "Zim-Zooms" with the same labor and materials which were used to manufacture

"Zoomerangs"; they manufactured "Zim-Zooms" at the same place (Detroit, Michigan) where they had manufactured "Zoomerangs"; and they planned all of the advertising and performed all of the invoicing of "Zim-Zooms".

In the brief submitted for the defendants we find the following presented for the consideration of the Court:

"In order to find the defendants in contempt of this Court's judgment, the Court must needs find as follows: .

"1. That the item Zim-Zoom manufactured by the Corporation is the same as or completely covered by the patent claims of the Zoomerang.

"2. That the Corporation is dominated and controlled by the partnership.

"3. That the intent of the defendants was to circumvent the judgment of this Court by unlawful means.

"4. That the judgment of this Court has indeed been violated."

■ A reading of the agreement of August 4, 1950, which sponsored the stipulation that brought about the judgment leads this Court to the inescapable conclusion that, because of the desire of the parties to avoid any further litigation and to amicably adjust their differences, they agreed that after midnight on November 30, 1950, the defendants, as licensees, would completely divorce themselves from the manufacture and/or sale of the toy "Zoomerang" with the intent that they should not manufacture and/or sell any toy that resembled the "Zoomerang" in any degree. To cull any other intent from this agreement would require that one completely ignore the very foundation of the agreement—the desire of the parties to avoid further litigation.

■ "It is the cardinal rule, however, that in the interpretation of contracts we should ascertain the intention of the parties and give effect to that intention if it can be done consistently with legal principles. Snelling v. Adair et al., 196 La. 624, 199 So. 782; Arab Corporation v. Bruce, 5 Cir., 142 F.2d 604." Wier v. Texas Co., 5 Cir., 180 F.2d 465, 468.

The element of time in the termination of the license agreement, the formation of the New York corporation with the transfer of certain assets of the copartnership defendant, the presence of one of the individual defendants as an officer of the New York corporation, the activity of the individual and copartnership defendants in the operation of the business of the New York corporation, and the similarity between the article ostensibly manufactured by the corporation and the patented article owned by the plaintiff bring into play a combination of circumstances that could not but nurture the litigation present in the instant controversy.

Because of the action of the defendants in manufacturing and selling a toy which is so similar to plaintiff's toy that it could be the subject matter of dispute, violence is done to the object of the agreement of August 4, 1950, and, consequently, such action is contemptuous of the judgment of this Court.

■ At the hearing in the contempt matter the defendants offered testimony in an attempt to establish that the toy "Zim-Zoom" was a new and different article with certain patentable features, whereas actually such testimony only accentuated the similarity between the toy "Zim-Zoom" and the toy "Zoomerang". "The mere aggregation of a number of old parts or elements which, in the aggregation, perform or produce no new or different function or operation than that theretofore performed or produced by them, is not patentable invention." Great Atlantic & Pacific Tea Co. v. Supermarket Equipment Corp., 340 U.S. 147, 151, 71 S.Ct. 127, 130.

I, therefore, find that the item "Zim-Zoom" ostensibly manufactured by the corporation is similar to the patented toy "Zoomerang"; that the corporation is dominated and controlled by the individual and copartnership defendants; that the intent of the defendants was to circumvent the judgment of this Court by unlawful means; and that the judgment of this Court has been violated and, therefore, this Court finds the defendants guilty of contempt of court for failing to comply with the terms

of the judgment entered in this cause on August 8, 1950; and each of the said defendants is permanently enjoined from manufacturing the amusement device known as "Zim-Zoom" or "Zoomerang" under those names, or any other names, and that the said defendants are required to post a substantial bond for a period of one year from the date of an order that will be entered in conformance with this opinion, the amount of the bond to be incorporated in the said order.