**REAMES WELL SERVICE, Plaintiff-Appellant,**

v.

**EL PASO NATURAL GAS COMPANY, Defendant-Appellee.**

**No. 27929**

**Summary Calendar.**

United States Court of Appeals
Fifth Circuit.

Oct. 20, 1969.

Bill Alexander, Odessa, Tex., Fred White, Farmington, N. M., Larry L. Barber, Odessa, Tex., Alexander & Barber, Odessa, Tex., of counsel, for appellant.

Emil Rassman, Midland, Tex., Hardie, Grambling, Sims & Galatzan, Allen Grambling, El Paso, Tex., Charles M. Tansey, Farmington, N. M., Rassman, Gunter & Boldrick, Midland, Tex., Tansey, Rosebrough, Roberts & Gerding, Farmington, N. M., for appellee.

Before WISDOM, COLEMAN and SIMPSON, Circuit Judges.

PER CURIAM:

■ We have concluded on the merits that oral argument is unnecessary in this case, Accordingly, we have directed the Clerk to place the case on the Summary Calendar and to notify the parties of this fact in writing. See Rule 18 of the Rules of this Court and Murphy v. Houma Well Service, 5 Cir. 1969, 409 F.2d 804, Part I.

This is an appeal from summary judgment granted in favor of the appellee, El Paso Natural Gas Company (El Paso). Reames Well Service, a sole proprietorship of S. E. Reames (Reames), sought to recover from appellee $174,214.19 for damage done to one of its well servicing workover units and associated surface equipment. The property damage resulted from a fire and explosion which occurred on November 28, 1966, on El Paso's property referred to in the record as Mudge # 4, in San Juan County, New Mexico.

■ On September 30, 1966, appellant Reames and appellee El Paso entered into a written contract in which Reames agreed to perform well service work for El Paso. Reames further agreed that it would have no cause of action against El Paso for damage to its workover unit and other surface equipment, regardless of who caused such damage.[1] Paragraph 10 of the contract expressly covered damage by fire to the rig and equipment of Reames. Reames agreed to assume the risk and replace fire loss without cost to the appellee El Paso, as follows:

"10. If oil and/or gas is encountered in sufficient quantities to endanger the rig, material, equipment or persons engaged in drilling said well, or their persons, Contractor shall assume the risk thereof, and, at its expense, remove and connect at a safe distance any boilers, fires, or other equipment or appurtenances which might constitute a hazard. If the rig shall be damaged by fire, or otherwise, Contractor shall replace the loss thereby without cost to the Company. In any case, Company shall not be liable to Contractor for delay pending replacement of the material and equipment destroyed, or for any damage to or loss of Contractor's property."

After this day work agreement of September 30, 1966, was executed, whenever further well service work was needed on any of El Paso's wells other than the well described in that contract,

1. Paragraph 14(1) of the contract contains the following express agreement with respect to liability for the loss or damage of such machinery and equipment:

"14. Responsibility for loss or damage to equipment * * * shall be as follows:

1. Contractor's Surface Equipment: Contractor *shall assume liability at all times* for damage to, or destruction of, Contractor's surface equipment, including but not limited to all drilling tools, machinery, and appliances, for use above the surface, *regardless of when or how such damage or destruction occurs*. Likewise, Company shall have no obligation to reimburse Contractor for any such loss or damage occurring during the time that the operation of Contractor's equipment has been taken over by Company as provided for in Paragraph 11.2(b) hereof." (Emphasis added.)

the practice of the parties was to amend the contract by execution of a separate letter agreement as to each additional well. The purpose was to insure that all the services by Reames on El Paso's wells would be subject to the terms and provisions of the September 30, 1966 master contract. Other than providing that the additional well service work would be performed subject to the September 30, 1966 agreement, the letter agreements covering the additional wells made no changes in the basic terms and provisions of the master contract.

Normally, during the course of operations, the September 30, 1966 contract was amended prior to any work being done on a new well. However, in the present situation, i. e. Mudge # 4, a separate letter agreement was not sent to Reames until December 8, 1966, and Reames had already started its plugging and abandoning operations on November 27, 1966. The fire and explosion occurred on November 28, 1966.

The sole issue on appeal is whether or not the district court erred in holding as a matter of law that the parties intended the December 8, 1966 letter agreement [2] to make the provisions of the September 30, 1966 contract effective on November 25, 1966. Reames contends that the district court erred in holding that there was no genuine issue as to any material fact and that El Paso was entitled to judgment as a matter of law. We agree with the district court that it is plain from the face of the December 8 letter agreement that the parties invoked the terms of the September 30 master con-

2.

"EL PASO NATURAL GAS COMPANY
EL PASO, TEXAS

December 8, 1966

Reames Well Service
Post Office Box "F"
Aztec, New Mexico
Gentlemen:

    Re: Amendment of Workover Agreement
        dated September 30, 1966
        El Paso Natural Gas Company—
        Reames Well Service

This letter, when accepted by you, will constitute an agreement between us by the terms of which the above-captioned Workover Agreement is amended.

El Paso Natural Gas Company is desirous of having a well Worker Over at the following location designated by this Company:

    Mudge #4 NE/4 of Section 1, T–31–N, R–11–W,
        San Juan County, New Mexico

You agree to Workover the above described well in accordance with all the applicable terms and provisions of the above-captioned Workover Agreement at the rates of compensation set forth therein.

If this letter correctly sets forth your understanding of this matter, please sign and return two (2) copies to us for our files, retaining the remaining copy for your records. When signed by the parties this letter will be effective as of November 25, 1966.

        Very truly yours,
        EL PASO NATURAL GAS COMPANY
        By: H. P. LOGAN
          Vice President

AGREED TO AND ACCEPTED THIS 13th day of December, 1966. REAMES WELL SERVICE

By: S. E. REAMES
    S. E. Reames".

tract, effective November 25, 1966. Mr. S. E. Reames' deposition testimony indicates that he read and accepted all the terms of the December 8, 1966 letter for the appellant and that he knew it applied to Mudge # 4.[3]

Appellant's awareness of its obligations as to Mudge # 4 under the December 8, 1966 separate letter agreement is further verified by the affidavit of Dugan H. Pearce, Chief Clerk for El Paso at Farmington, New Mexico, filed in support of the motion for summary judgment. Rule 56, F.R.Civ.P. was properly invoked here. Wier v. Texas, 5 Cir. 1950, 180 F.2d 465, 469.

The remaining issues raised by appellant are so without merit that they do not require discussion.

Affirmed.

3. "Q. Now with respect to Exhibit 2, (letter agreement dated December 8, 1966) the letter states that you agreed to and accepted the terms of the letter on December 13, 1966, does it not?

A. Yes, sir.

Q. And is that a fact that you did?

A. Yes, sir.

Q. And the letter recites that the Reames Well Service agrees to work over the Mudge No. 4 well in accordance with all of the terms and provisions of the September 30, 1966, day work contract, identified as El Paso Exhibit 1, does it not?

A. Yes, sir.

* * * * * * *

Q. This letter does apply to the Mudge No. 4, doesn't it?

A. Yes, sir.

Q. And that was, of course, the well you were working on when this accident happened?

A. Yes, sir.

Q. And this letter does in turn refer back to the workover agreement of September 30, 1966, does it not?

A. Yes, sir.

Q. No one forced you to sign this agreement, did they?

A. No, sir.

Q. Did you enter into this agreement (El Paso Exhibit 2) of your own free will and accord?

A. Yes, sir.

* * * * * *

Q. Now, when did this (signed the Mudge No. 4 letter agreement) you already had done the plugging and abandoning work on Mudge No. 4, hadn't you?

Q. And you knew what you had done was to plug and abandon it?

A. Yes, sir.

Q. And when you signed this, you knew that?

A. Yes, sir.

* * * * * *

Q. You knew what you were signing, didn't you?

A. Yes, sir.

* * * * * *

Q. You knew what was in it, didn't you?

Q. You knew what it said?

A. Yes, sir.

Q. Did you raise any objection to the language?

A. No, sir.

Q. You did receive consideration for the work done on the Mudge well where the accident occurred in the amount of $4,447.21?